NATURAL RESOURCES DEFENSE
COUNCIL, INC., et al.,
Plaintiffs,

v.

VYGEN CORPORATION, Defendant.

No. 4:92CV0024.

United States District Court,
N.D. Ohio, E.D.

Sept. 24, 1992.

98

Stephen P. Samuels, Law Offices of Stephen P. Samuels, Columbus, Ohio, Andrew Buchsbaum, Nat. Environmental Law Center, Ann Arbor, Mich., Nancy S. Marks, James F. Simon, Katherine Kennedy, Turner R. Odell, Jr., Natural Resources Defenses Council, Inc., New York City, for plaintiffs.

Duane J. Dubsky, Jeffrey A. Ford, Law Offices Of Charles M. Diamond, Ashtabula, Ohio, Harry F. Klodowski, Jr., Barry J. Trilling, Doepken, Keevican, Weiss & Medved, Pittsburgh, Pa., for defendant.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

Natural Resources Defense Council, Inc. and the Ohio Public Interest Research Group bring this citizen action, pursuant to 33 U.S.C. § 1365, against Vygen Corporation for violations of the Clean Water Act. Both environmental groups have moved for partial summary judgment on the question of liability. Vygen has moved for summary judgment as well. For the reasons stated, the plaintiffs' motion is granted and the defendant's motion is denied.

### I.

The Clean Water Act of 1972, as amended, prohibits the discharge of any pollutants into navigable waters except in accordance with a permit issued by the United States Environmental Protection Agency (U.S. EPA) or an authorized state. 33 U.S.C. § 1311(a), § 1342. Pursuant to 33 U.S.C. § 1342(b), the U.S. EPA has authorized the state of Ohio to establish and administer its own permit program so long as it conforms to federal guidelines.

Vygen Corporation operates an organic chemical plant in Ashtabula, Ohio. On September 29, 1989, the Ohio Department of Environmental Protection (OEPA) issued Vygen a permit to discharge its industrial wastewater into the Vygen tributary of Fields Brook. That permit establishes numerical limits on the amount and concentration of specified pollutants that Vygen may discharge into the brook. Without a valid permit from the OEPA, Vygen may not legally discharge *any* industrial waste into navigable waters. 33 U.S.C. § 1311(a).

To ensure compliance with permit effluent limitations, the Clean Water Act requires a permit holder, like Vygen, to monitor its discharges and report on its permit compliance on a monthly basis. 33 U.S.C. § 1318. The monthly discharge monitoring reports ("DMRs") are public information. 40 C.F.R. § 122.41. In its DMRs, Vygen has admitted that it has violated its permit limits on at least 149 occasions from January 1989 through March 1992. In addition, Vygen's DMRs demonstrate that Vygen

has violated its monitoring and reporting requirements on several occasions during the same period. Each of these violations constitutes a violation of the Clean Water Act.

To ensure compliance with the Clean Water Act, OEPA instituted an administrative enforcement action against Vygen in 1989. On February 9, 1990, OEPA issued an administrative order, called a Director's Final Findings and Orders ("DFFO"), which found that Vygen was not in compliance with the final effluent limitations contained in its permit for vinyl chloride. To achieve compliance "as expeditiously as practicable," OEPA established deadlines for the construction of a new wastewater treatment system to reduce pollutants. This schedule required Vygen to apply for a permit to install within twelve (12) months, initiate construction within twenty-four (24) months, and achieve final compliance within thirty-six (36) months. It also ordered Vygen to pay $25,000 "in settlement of Ohio EPA's claim for civil penalties which may be assessed pursuant to Chapter 6111 of the Ohio Revised Code."

After the issuance of the 1990 DFFO, Vygen continued to violate the terms of the 1990 DFFO and the requirements of its permit. As a result, in November, 1991, OEPA issued a second DFFO which found that Vygen had failed to comply with the effluent limitations on five (5) other pollutants, in addition to vinyl chloride. It also found that Vygen had failed to apply for a permit to install a wastewater treatment facility in accordance with the 1990 DFFO and comply with its monitoring and reporting requirements. To address these violations, OEPA issued a revised compliance schedule with modified interim effluent limitations and monitoring requirements. In addition, the 1991 DFFO ordered Vygen to pay $50,000 in settlement of OEPA's claim for civil penalties. The first $10,000 was to be paid by December, 1991, and the remaining $40,000 was to be paid by May, 1992.

On May 8, 1992, OEPA wrote Vygen to inform it that it had violated the 1991 DFFO by failing to submit approvable detail plans for the construction of a waste-water treatment system. Vygen had requested a delay in these deadlines. In addition, OEPA informed Vygen on May 22, 1992, that it has violated the 1991 DFFO by failing to pay the $40,000 penalty on time.

On September 6, 1991, before the issuance of the 1991 DFFO, the National Resource Defense Council, Inc. ("NRDC") and the Ohio Public Interest Research Group ("OPIRG") sent Vygen a notice of intent to sue for alleged violations of the Clean Water Act. A copy of this letter was sent to OEPA. Four months later, on January 3, 1992, NRDC and OPIRG filed this action pursuant to 33 U.S.C. § 1365, charging that Vygen had violated the terms of its discharge permit and the state administrative orders and seeking a declaratory judgment, permanent injunctive relief, appropriate civil penalties, and costs including attorneys' fees. They have now moved for partial summary judgment on the question of liability. In response, Vygen has moved for summary judgment as well. For the reasons stated below, this Court grants NRDC and OPRIG's motion for partial summary judgment and denies Vygen's motion for summary judgment.

## II.

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law ...

■ The nature of materials properly presented in a summary judgment pleading is set forth in Federal Rule of Civil Procedure 56(e):

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein ... The court may permit affidavits to be supplement-

ed or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

However, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In reviewing summary judgment motions, this Court must view the evidence in the light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *White v. Turfway Park Racing Assn., Inc.*, 909 F.2d 941, 943–44 (6th Cir.1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. at 2512. The fact that both parties have filed cross-motions for summary judgment does not change this standard of review. *Taft Broadcasting v. United States*, 929 F.2d 240, 249 (6th Cir. 1991).

## III.

There is no question that Vygen has failed to comply with the terms of its permit and the terms of the 1990 and 1991 DFFOs. Accordingly, it is subject to both federal and state enforcement actions for failure to comply. *See* 33 U.S.C. §§ 1319, 1342(b)(7). In addition, Vygen may be subject to a "citizen suit" under 33 U.S.C. § 1365(a)(1), which provides:

Except as provided by subsection (b) of this section and section 1319(g)(6) of this title, any citizen may commence a civil action on his own behalf—against any person ... who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation.

As the 33 U.S.C. § 1319(g)(6) provides, a citizen's suit may not be brought where "... a State has commenced and is diligently prosecuting an action under a State law comparable to [33 U.S.C. § 1319(g)]."

Vygen argues that plaintiffs are barred from bringing this citizens suit because the OEPA is diligently prosecuting an action against Vygen under Ohio law. However, in order for § 1319(g)(6)(A) to preclude a citizens suit, the state law under which Vygen is being prosecuted must be *comparable* to the federal law. For the reasons stated below, this Court finds that Ohio law is not comparable to 1319(g)(6)(A), and thus the DFFOs issued by OEPA do not preclude plaintiffs' actions.

## IV.

The Ohio law differs from the Clean Water Act in a very significant way. The OEPA administrative orders issued against Vygen are issued under the state Water Pollution Control Act, Ohio Revised Code § 6111.01 *et seq.*, and the regulations promulgated thereunder, Ohio Administrative Code Chapter 3745–33.[1]

---

**1.** Procedurally, OEPA actions must comply with the statute establishing the OEPA, Ohio Revised Code § 3745.01 *et seq.*, and its accompanying regulations, Ohio Administrative Code Chapter 3745–45, and the Ohio Administrative Procedure Act, § 119.01 *et seq.*

The Ohio Act is not comparable to the federal Clean Water Act because the Ohio Act lacks the public participation safeguards present in 1319(g). Section 1319(g) contains several provisions to safeguard the public's right to participate in the administrative action process. Section 1319(g)(4) specifies that:

1) the public *must* be given notice of a proposed order and must be provided a "reasonable opportunity to comment" on the order before it is finalized; and

2) any person who provides such comment must be given individual notice of any subsequent hearing pertaining to that penalty; and

3) if no such hearing is scheduled, any such person may petition the agency to hold a hearing. The agency must consider the evidence presented by the petitioner to set aside the order or hold the hearing, and if the agency decides not to hold a hearing, it must publish its reasons; and

4) any person who comments on a penalty order has the right to judicial review of the penalty assessed.

These requirements are *mandatory;* they are not permissive.

■ State laws must contain safeguards comparable to those of § 1319(g) if state agency orders are to preclude citizen suits. *Atlantic States Legal Foundation v. Universal Tool and Stamping Co.,* 735 F.Supp. 1404, 1415 (N.D.Ind.1990). These safeguards must be *mandatory,* rather than permissive, if state law is to be considered comparable to § 1319(g). *Id.* at 1416.[2] (emphasis added).

As evidenced by the detailed requirements of § 1319(g)(4) set forth above, Congress was careful to limit preclusion of citizen enforcement actions only in those situations where the affected public had *ample* opportunity to participate in the process by which the administrative action was taken. Thus, the state law safeguards must be examined carefully to determine whether they are comparable to those provided by § 1319(g)(4).

Ohio law does not provide safeguards comparable to § 1319(g)(4). Although Ohio law sets out circumstances under which an agency may decide to provide for notice, comment and hearings, it also allows the OEPA the discretion to avoid such public participation, as it did in this case.

Under Ohio law, the OEPA may issue a final order, a proposed order or a draft order. OAC 3745-47-05. The director of OEPA may issue a final action without first issuing a proposed action. OAC 3745-47-05(E), ORC 3704.04. The Ohio regulations specify that the director shall provide notice of all actions, including final actions, but only *after* the action has been taken. OAC 3745-47-07. Thus, if the agency decides to issue a final enforcement action without first issuing a proposed action, Ohio law denies the public any right to prior notice of the final order, no right to comment on the order before it is issued, and no right to a hearing prior to the order's issuance. Therefore, OEPA has the discretion to avoid public participation requirements by not issuing a proposed action. This is, in fact, what the OEPA did in the case at hand.

Furthermore, the notice requirements in the regulations are directory, *not mandatory. William L. Campbell v. Maynard,* EBR 521036 (1983). Failure to give notice does not invalidate any action by the director, absent a showing of detrimental reliance by a *party* to the action. OAC 3745-47-07(F). Indeed, in the case at hand, no notice was ever published or sent to plaintiffs after the 1991 DFFO was issued. As discussed above, § 1319(g) *mandates* public notice and opportunity to be heard *prior* to the imposition of a civil penalty.

Vygen argues that the public notice requirement is satisfied because the OEPA records are public records, which ensures that any interested person can review them. The First Circuit has held that a state statute which provides for orders which are public documents protects citizen

**2.** To the extent that the holding in *North & South Rivers Watershed Ass'n. v. Scituate,* 949 F.2d 552 (1st Cir.1991) differs from this conclusion, this Court disagrees. See *infra,* at pp. 101–02.

interests sufficiently to be comparable to § 1319(g)'s public participation provisions. *North & South Rivers Watershed Ass'n v. Scituate,* 949 F.2d 552, 556 n. 7 (1st Cir. 1991). This Court disagrees. The detailed, mandatory safeguards of citizen participation contained in § 1319(g)(4) are not comparable to simply having a public record on file somewhere for a citizen to look at should that citizen somehow discover that a particular action has been taken. Public notice is fundamental to protecting citizen participation in agency decisions. If the public does not know about agency actions, it cannot avail itself of any right to participate in any action that may be taken pursuant to that statute.

Thus, since Ohio law has no mandatory public notice requirement, nor a requirement of public notice and opportunity to be heard prior to the issuance of a civil penalty, Ohio's provisions are not comparable to § 1319(g), and the plaintiffs' claim is not barred by Ohio's administrative orders.

## IV.

Vygen also alleges that the plaintiffs' claim is barred by § 1319(g)(6)(a)(iii), which provides that any violation

> for which the ... State ... has issued a final order not subject to further judicial review and the violator has paid a penalty assessment under this subsection, or such comparable state law, as the case may be, shall not be the subject of a civil penalty action under ... section 1365 of this title.

Vygen's argument fails because, as discussed *supra*, the administrative orders issued by the OEPA were not issued under a state law comparable to § 1319(g). Thus, § 1319(g)(6)(a)(iii) does not bar plaintiffs' suit.

## V.

Vygen has also challenged the plaintiffs' standing in this case. Vygen argues that the recent United States Supreme Court decision in *Lujan v. Defenders of Wildlife,* — U.S. —, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), undermines the traditional standard for standing in citizen suits under the Clean Water Act. However, this Court finds that *Lujan* does not alter plaintiffs' standing in this case.

In *Lujan,* the Supreme Court reaffirmed the constitutional requirements for standing: an injury in fact which affects the plaintiff in a personal way and is imminent; the injury must be fairly traceable to the defendant's actions; the injury must be likely to be redressed by a favorable decision. *Id.* 112 S.Ct. at 2136.

To meet these standing requirements, plaintiffs must submit affidavits or other evidence showing that one or more of plaintiffs' members are directly affected, apart from their special interest. *Id.* at 2137–38.

In *Lujan,* plaintiffs' members had previously visited the areas in question five to ten years earlier, but had no current plans to visit the areas again. Here, to establish standing, plaintiffs submitted affidavits of four of their members. These members state that they live or recreate in the vicinity of defendant's organic chemical plant and that their health, recreational, environmental or professional interests are harmed by the pollution. Marian Plank states that she lives 12 miles from the Ashtabula River and visits the River two to three times per year with her grandchildren. Marlene Sartini lives ½ mile from the river and goes boating on the river four to five times per year. She states that the pollution in the river makes it unpleasant to boat there. She also states that her public relations business is affected by the pollution. Sartini's business is to help businesses in Ashtabula project a positive image for Ashtabula. The pollution in the Ashtabula River makes it more difficult for her to promote a positive image of the city. Jessica Jenkins and Katherine Armer state that they had an unpleasant encounter with the discolored and smelly waters of the Vygen tributary. They both also stated that they would not return to Ashtabula to recreate nor would they swim in Lake Erie near the River's mouth. If the river were clean, they would recreate there. Thus, plaintiffs have shown an injury in fact which affects them personally and is imminent.

Vygen also argues that plaintiffs do not have standing in this case because their injury is not redressable. Vygen argues that even if it were forced to close its plant, the Ashtabula River and Lake Erie would continue to be polluted by other industries upstream on the river, and therefore, plaintiffs' injury is not redressable. This Court finds this argument eminently unpersuasive. Plaintiffs need not show that polluted waters will be "returned to pristine condition" in order to satisfy the minimal standing requirements; it is sufficient that an injunction will decrease pollution. *PIRG of New Jersey v. Powell Duffryn Terminals, Inc.*, 913 F.2d 64, 73 (3rd Cir. 1990).

### VI.

Plaintiffs have also moved for summary judgment on the issue of Vygen's liability for several violations of the Clean Water Act. Plaintiffs assert that the uncontroverted facts demonstrate that Vygen, by its own admission, has violated the terms of its NPDES permit.

As noted earlier, the Clean Water Act requires a permit holder to monitor its discharges and report the results to the EPA or the state in DMRs. If the permit holder fails to comply with its permit, it is deemed to be in violation. *Atlantic States Legal Foundation v. Universal Tool* 735 F.Supp. 1404, 1420-2 (N.D.Ind.1990).

Plaintiffs claim that Vygen has admitted in its DMRs that its discharge into the Vygen tributary of Fields Brook has exceeded the limits of its NPDES permit at least 149 times since January of 1989. Plaintiffs also claim that the DMRs document 3,731 cases of non-reporting. Vygen does not deny it violated the NPDES permit, but they dispute the number of violations, alleging that plaintiffs made 68 miscalculations in their violation log and at least 1,765 in their reporting violation log, exaggerating Vygen's alleged noncompliance by 84% to 89.9%.

Accordingly, this Court grants plaintiffs' summary judgment motion as to Vygen's liability, but finds that there is a material issue of fact as to the total number of violations.

### VII

In sum, this Court grants NRDC and OPIRG's motion for partial summary judgment and denies Vygen's motion for summary judgment. This Court finds that there remains a material issue of fact as to the specific number of violations, and as to the scope of relief. Therefore, this Court orders the parties to appear before this Court on September 29, 1992, at 3:00 p.m., for a status conference regarding the further disposition of this case.

IT IS SO ORDERED.