29 F.3d 376
 39 ERC 1122, 24 Envtl. L. Rep. 21,573
 ARKANSAS WILDLIFE FEDERATION, Appellant,
v.
ICI AMERICAS, INC., Appellee.
United States of America, Amicus Curiae.
Arkansas Environmental Federation; Associated Industries of
Arkansas, Inc.; American Iron and Steel Institute; The
American Petroleum Institute; The Chamber of Commerce of
the United States; National Agricultural Chemicals
Association; Acme Metals, Incorporated; Chevron Corp.;
GAF Corporation; General Electric Company; Hoechst
Celanese Corporation; Murphy Oil USA, Inc.; Owens-Corning
Corporation; PMC, Inc.; Sandoz Pharmaceuticals
Corporation; Shell Oil Company; Total Petroleum, Inc.;
Witco Corporation, Amici Curiae.
 No. 93-2181.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 13, 1993.
Decided July 7, 1994.
Rehearing and Suggestion for Rehearing En Banc Denied Aug. 12, 1994.
 
 James M. Hecker, Washington, DC, argued (James M. Hecker, Washington, DC, Samuel E. Ledbetter, Little Rock, AR, and Jacqueline M. Warren, New York City, on the brief), for appellant.
 James Felix Goodhart, Little Rock, AR, argued, for appellee.
 Nancy K. Stoner, Washington, DC, argued (Peter R. Steenland, Jr., Anne H. Shields, Anne S. Almy, Mark R. Haag and David Drelich, Washington, DC, on the brief), for amicus curiae U.S.
 Before McMILLIAN, FAGG and BOWMAN, Circuit Judges.
 McMILLIAN, Circuit Judge.
 
 
 1
 Arkansas Wildlife Federation (AWF) appeals from a final order entered in the United States District Court[1] for the Eastern District of Arkansas granting summary judgment in favor of ICI Americas Inc. (ICI), and dismissing AWF's action against ICI pursuant to the citizen suit provision of the federal Clean Water Act (CWA), 33 U.S.C. Sec. 1365. Arkansas Wildlife Fed'n v. ICI Americas Inc., 842 F.Supp. 1140 (E.D.Ark.1993). For reversal, AWF argues that the district court erred in holding that (1) AWF's action was jurisdictionally barred under 33 U.S.C. Sec. 1319(g)(6)(A)(ii), (2) the jurisdictional bar applied to all of ICI's past violations of the CWA, and (3) the jurisdictional bar covered claims for declaratory and injunctive relief, as well as civil penalties. For the following reasons, we affirm the order of the district court.
 
 I. Background
 
 2
 ICI operates a herbicide manufacturing plant in North Little Rock, Arkansas. In 1988, ICI received a permit from the Arkansas Department of Pollution Control and Ecology (ADPC & E), under the Federal National Pollutant Discharge Elimination System (NPDES) permit program, for wastewater discharge from three point sources (outfalls 001, 002, 003) into waters that flow to the Arkansas River. Pursuant to 33 U.S.C. Sec. 1342, the United States Environmental Protection Agency (EPA) has delegated authority to the State of Arkansas to issue NPDES permits.
 
 
 3
 Based upon sampling reports that ICI had submitted to ADPC & E, the agency sent notices to ICI during a period of over two years, from late 1988 to early 1991, informing ICI that it was violating pollutant discharge limits mandated under ICI's NPDES permit. By letter dated February 15, 1991, ADPC & E informed ICI that it was subject to enforcement action under the Arkansas Water and Air Pollution Control Act, Ark.Code Ann. Sec. 8-4-101 et seq., and requested a meeting. At a meeting on March 5, 1991, ICI representatives presented ADPC & E with a compliance action plan. The parties agreed to enter into a Consent Administrative Order (CAO). The CAO, effective April 16, 1991, required ICI to pay a civil penalty of $1,000 and to report on its remedial actions and come into compliance with the effluent limitations under the NPDES permit within thirty days. The CAO alternatively required ICI to submit a report setting forth a revised plan for expeditious compliance if ICI were to anticipate failure to comply by the end of the thirty-day period. The CAO stated that it was in full settlement of the civil penalties for violations specified in the Findings of Fact, which listed some, but not all, of ICI's past violations. On September 9, 1991, ICI and ADPC & E executed a corrected CAO which modified the original CAO by specifically incorporating all of ICI's past violations.
 
 
 4
 By December of 1991, ICI was not in compliance with the effluent limitations under the NPDES permit. On December 26, 1991, ICI asked ADPC & E to extend the compliance deadline to April 30, 1992. ICI's written request contained a summary of ICI's remedial efforts thus far and alleged a need for more time to investigate sources of zinc contamination. ADPC & E granted the extension and assessed another penalty of $500. In March of 1992, ICI requested a construction permit to lay new piping that would combine the existing three outfalls (001, 002, and 003) into one new outfall (004). ICI represented to ADPC & E that the effluent levels from outfall 004 would fully comply with the limitations under the NPDES permit. ADPC & E granted the construction permit and, on April 30, 1992, issued an amended corrected CAO, which imposed another $500 penalty and required compliance with the NPDES permit by December 15, 1992, except for the zinc limitations.
 
 
 5
 After completing construction of the new piping, ICI filed for a revised NPDES permit to address the discharge from new outfall 004. Rather than issue a new NPDES permit, ADPC & E issued a second amended CAO, which terminated the existing requirements for outfalls 001, 002, and 003 and imposed sampling and reporting requirements for new outfall 004.[2] ICI was again assessed a penalty of $500. This amended CAO, issued in January of 1993, imposed the same effluent limitations as before, except that there was no limitation for zinc levels. It was effective until October 31, 1993, the date on which ICI's NPDES permit would expire.
 
 
 6
 In the meantime, on July 2, 1991, after the original CAO was issued, but before any of the corrections or amendments to the CAO were issued, AWF gave ICI notice of its intent to file this citizen suit under the CWA. On October 15, 1991, within 120 days of the notice, AWF filed its complaint alleging ICI's ongoing violation of the CWA and seeking civil penalties, declaratory relief, injunctive relief, and the costs of litigation.
 
 
 7
 On November 5, 1991, ICI moved to dismiss AWF's complaint. The district court denied ICI's motion without prejudice and allowed limited discovery. After further discovery, ICI filed a motion for summary judgment on grounds that AWF's suit was jurisdictionally barred under 33 U.S.C. Sec. 1319(g)(6)(A)(ii) and (iii).[3] AWF opposed the motion and filed cross-motions for summary judgment and for injunctive relief. By order dated April 8, 1993, the district court granted ICI's motion for summary judgment and dismissed AWF's motions as moot. The district court held that AWF's action was jurisdictionally barred because 33 U.S.C. Sec. 1319(g)(6)(A)(ii) precludes citizen suits for violations "with respect to which a State has commenced and is diligently prosecuting an action under a State law comparable to [33 U.S.C. Sec. 1319(g) ]." The district court further held that the jurisdictional bar applied to all of ICI's past violations of the CWA and covered claims for declaratory and injunctive relief, as well as civil penalties. Arkansas Wildlife Fed'n v. ICI Americas Inc., 842 F.Supp. 1140 (E.D.Ark.1993). AWF appealed.[4]
 
 II. Discussion
 
 8
 We review a grant of summary judgment de novo. The question before the district court, and this Court on appeal, is whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. Crain v. Board of Police Comm'rs, 920 F.2d 1402, 1405-06 (8th Cir.1990). In the present case, the facts were not in material dispute. Rather, the district court disposed of the case based upon its determinations of law. We must now decide whether the district court applied correct legal standards on issues which have not previously been presented to this Court.
 
 A. Jurisdictional bar
 
 9
 We must first decide whether, in dismissing AWF's action as jurisdictionally barred, the district court correctly applied the criteria set forth in 33 U.S.C. Sec. 1319(g)(6)(A)(ii) to the facts of the present case. Specifically, the district court concluded that ADPC & E had commenced and was diligently prosecuting an administrative penalty action against ICI under an Arkansas law comparable to 33 U.S.C. Sec. 1319(g). The district court also concluded that the jurisdictional bar applied to all of ICI's past violations, even though the original CAO only referred to some, but not all, past violations, and the correction which incorporated the remaining past violations was made by ADPC & E after AWF gave notice of its intent to file this suit.
 
 
 10
 AWF first argues that ADPC & E did not "commence" a civil penalty action against ICI by filing the original CAO on April 16, 1991, because, under ADPC & E's own regulations, ADPC & E was required to issue a formal "Notice of Violation" in order to initiate an enforcement action. AWF argues that discussion and issuance of a CAO are intended to precede enforcement actions, not commence them. In support of this argument, AWF notes that none of the usual notice and hearing procedures designed to protect and give access to the public and interested parties are triggered by the execution of a CAO, whereas those procedures would be triggered by the issuance of a formal Notice of Violation.
 
 
 11
 In response, ICI contends that, according to the applicable state regulations, ADPC & E may commence enforcement proceedings either by issuing a Notice of Violation or by filing a CAO (or other similar administrative pleading) with the Secretary of the Arkansas Pollution Control and Ecology Commission. The latter approach initiates formal adjudicatory proceedings; a docket number is assigned to the matter, for example, and interested parties have a right to intervene.
 
 
 12
 Consistent with our analysis below of the criterion that the state regulatory scheme must be "comparable" to the federal scheme, we hold that the states are afforded some latitude in selecting the specific mechanisms of their enforcement program. The regulations promulgated by ADPC & E provide in pertinent part:
 
 
 13
 Except as otherwise provided in Part VI [referring to emergency and/or imminent hazard actions] the Director shall not issue an order, except by consent, to any person for violation of the laws and regulations administered by the Department unless and until such person has been served with a Notice of Violation and had the opportunity to request an adjudicatory hearing thereon in accordance with the provisions of this Part.
 
 
 14
 ADPC & E Reg. No. 8, Part V, Sec. 2(a) (emphasis added). In the present case, ADPC & E issued an order to ICI with ICI's consent. ADPC & E was therefore not required to issue a Notice of Violation under the regulation cited above. Once the ADPC & E issued the CAO, interested third parties had a right to intervene, and certain notice and hearing procedures became available to interested third parties. Moreover, ICI became subject to further penalties for failure to comply with the CAO. Therefore, we agree with the district court that ADPC & E "commenced" an action within the meaning of 33 U.S.C. Sec. 1319(g)(6)(A)(ii), when it issued the original CAO on April 16, 1991.
 
 
 15
 AWF also claims that the district court erred in holding that ADPC & E was "diligently prosecuting" an enforcement action against ICI, within the meaning of 33 U.S.C. Sec. 1319(g)(6)(A)(ii). AWF argues that ADPC & E repeatedly and unnecessarily abandoned nearly all of its enforcement powers, failed to address ICI's violations, gave ICI repeated extensions for compliance, and assessed insignificant amounts of civil penalties in comparison to the amounts of ICI's economic benefit and the maximum penalties authorized under the CAO. AWF claims, for example, that ADPC & E assessed only a few $500 penalties for ICI's repeated failures to meet the compliance deadlines under the CAO and yet, by contrast, the daily penalties authorized under the CAO could have totaled as much as $170,000.
 
 
 16
 In response, ICI emphasizes that, from the time the original CAO was issued, ADPC & E required ICI to correct the violations, imposed a compliance and reporting schedule, regularly assessed monetary penalties, and reserved the right to assess additional penalties. ICI submitted and implemented a comprehensive remedial action plan, spent approximately half a million dollars making technological changes, and ultimately did come into compliance with the effluent standards under the NPDES permit. ICI argues that the penalties assessed by ADPC & E reasonably reflected the history and seriousness of ICI's past violations and took into consideration ICI's financial commitment in implementing technological improvements. Finally, ICI highlights evidence that the penalties assessed were comparable to penalties assessed by ADPC & E in similar cases.
 
 
 17
 We agree with the district court's conclusion that ADPC & E was "diligently prosecuting" its administrative penalty action against ICI. In Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., 484 U.S. 49, 60-61, 108 S.Ct. 376, 382-83, 98 L.Ed.2d 306 (1987) (Gwaltney ), the Supreme Court explained that Congress intended citizen suits brought pursuant to 33 U.S.C. Sec. 1365 to play an "interstitial," rather than "potentially intrusive" role, that such suits are proper only when the federal, state, or local agencies fail to exercise their enforcement responsibility, and that such suits should not considerably curtail the governing agency's discretion to act in the public interest. In North & South Rivers Watershed Ass'n v. Town of Scituate, 949 F.2d 552, 557 (1st Cir.1991) (Scituate ), the First Circuit suggested that courts must afford appropriate deference to the expertise of the agency enforcing the state's environmental laws. It would be unreasonable and inappropriate to find failure to diligently prosecute simply because ICI prevailed in some fashion or because a compromise was reached. Connecticut Fund for the Env't v. Contract Plating Co., 631 F.Supp. 1291, 1294 (D.Conn.1986). We therefore hold that, under the facts of the present case, ADPC & E was "diligently prosecuting" an administrative penalty action against ICI, within the meaning of 33 U.S.C. Sec. 1319(g)(6)(A)(ii).
 
 
 18
 Third, AWF argues that the Arkansas enforcement provisions are not "comparable" to the CWA, as required under 33 U.S.C. Sec. 1319(g)(6)(A)(ii), particularly with respect to the public notice and comment provisions of Sec. 1319(g)(4)(A). The federal statute requires that "[b]efore issuing an order assessing a civil penalty under this subsection the Administrator [of EPA] ... shall provide public notice of and reasonable opportunity to comment on the proposed issuance of such order." 33 U.S.C. Sec. 1319(g)(4)(A). AWF argues that the Arkansas statute is not comparable because it only provides an ex post facto citizen's right to intervene, with no public notice at any time, and no opportunity to comment while the consent order is being proposed.
 
 
 19
 AWF relies upon NRDC v. Vygen Corp., 803 F.Supp. 97, 100-02 (N.D.Ohio 1992) (Vygen ), in which the District Court for the Northern District of Ohio held that Ohio's state laws were not comparable to the CWA, for purposes of applying 33 U.S.C. Sec. 1319(g)(6)(A)(ii), because the state law lacked mandatory procedures for public participation prior to the imposition of a civil penalty. In Vygen, the district court held "since Ohio law has no mandatory public notice requirement, nor a requirement of public notice and opportunity to be heard prior to the issuance of a civil penalty, Ohio's provisions are not comparable to Sec. 1319(g), and the plaintiffs' claim is not barred by Ohio's administrative orders." 803 F.Supp. at 102; see also Atlantic States Legal Found. v. Universal Tool & Stamping Co., 735 F.Supp. 1404, 1415-16 (N.D.Ind.1990).
 
 
 20
 In response, ICI argues that the term "comparable" means that the state law need only be sufficiently similar to the federal law, not identical. ICI argues that Arkansas law is sufficiently similar because it adequately provides a meaningful opportunity for public participation in the enforcement process. ICI notes that copies of permits, permit applications, and related documentation (e.g., consent orders) are publicly available, Ark.Code Ann. Sec. 8-4-207(6)(A), and that anyone may submit comments, request an adjudicatory hearing, and be made a party to the relevant proceedings. ADPC & E Reg. No. 8, Part VII, Sec. 1. The regulations also provide that any person who either has a statutory right to intervene or has an interest that may be adversely affected by the outcome of the proceeding is entitled to intervene at any stage of the enforcement proceeding by filing a timely petition. ADPC & E Reg. No. 8, Part VII, Sec. 5. ICI contends that by providing these rights and procedures, Arkansas law satisfies the comparability requirement.
 
 
 21
 In Scituate, the appellants claimed that the Massachusetts Clean Waters Act, as applied in that case, was not comparable to the federal CWA. The First Circuit rejected that argument stating that "[t]he focus of the statutory bar to citizen's suits is not on state statutory construction, but on whether corrective action already taken and diligently pursued by the government seeks to remedy the same violations as duplicative civilian action." 949 F.2d at 556. The First Circuit held that the Massachusetts law, which is virtually identical to the Arkansas law with respect to interested third-party intervention, was sufficiently "comparable" to the public participation provisions under the federal CWA. Id. at 556 & n. 7; see also Saboe v. Oregon, 819 F.Supp. 914, 918 (D.Or.1993); Connecticut Coastal Fishermen's Ass'n v. Remington Arms Co., 777 F.Supp. 173, 182-83 (D.Conn.1991), rev'd in part on other grounds, 989 F.2d 1305 (2d Cir.1993). The common thread running through these cases is a finding that the overall regulatory scheme affords significant citizen participation, even if the state law does not contain precisely the same public notice and comment provisions as those found in the federal CWA. We agree with the reasoning in Scituate that the comparability requirement may be satisfied so long as the state law contains comparable penalty provisions which the state is authorized to enforce, has the same overall enforcement goals as the federal CWA, provides interested citizens a meaningful opportunity to participate at significant stages of the decision-making process, and adequately safeguards their legitimate substantive interests. 949 F.2d at 556 & n. 7. Under those circumstances, the state statute should be presumed comparable unless the facts of the specific case demonstrate that the state denied an interested party a meaningful opportunity to participate in the administrative enforcement process. Notably, on the facts of the present case, AWF had actual notice of ADPC & E's issuance of the CAO when it inspected ADPC & E's files five months before this lawsuit was filed. AWF could have intervened in the administrative process but instead chose to collaterally attack the enforcement action through this federal lawsuit. We have no reason to believe that AWF would have been denied meaningful participation in the administrative process had it intervened. We therefore hold that the Arkansas statute is "comparable" to 33 U.S.C. Sec. 1319(g) for purposes of applying 33 U.S.C. Sec. 1319(g)(6)(A)(ii) to the present case.[5]
 
 B. Civil penalties
 
 22
 AWF separately argues that it should at least have been permitted to seek civil penalties for violations not specifically addressed in the original April 1991 CAO. AWF relies on 33 U.S.C. Sec. 1319(g)(6)(B)(ii), which provides that a citizen suit will be allowed, despite a state administrative enforcement action, if notice was served prior to the commencement of the state action and the citizen suit was filed within 120 days of the notice. AWF sent its notice of intent to sue to ICI after the original CAO was issued but before the corrected CAO was issued on September 9, 1991, specifically incorporating all of ICI's past violations. AWF's argument assumes that, if the original CAO "commenced" a state administrative enforcement action, then each corrected or amended CAO also "commenced" a new and separate administrative enforcement action. In response, ICI argues, and we agree, that the district court correctly found that the original CAO, and the corrected and amended CAOs, were all part of a single ongoing enforcement action and therefore Sec. 1319(g)(6)(B)(ii) does not apply.
 
 C. Declaratory and injunctive relief
 
 23
 Finally, AWF argues that the district court erred in dismissing its claims for declaratory and injunctive relief, instead of dismissing only the claims for civil penalties. Citing Scituate, 949 F.2d at 557-58, the district court reasoned that policy considerations which prevent AWF from bringing claims for civil penalties equally apply to AWF's claims for declaratory and injunctive relief.
 
 
 24
 AWF relies on the language of the relevant statute for the proposition that the jurisdictional bar on citizen suits, when applicable, only applies to claims for civil penalties. Section 1319(g)(6)(A) provides that a violation that is being prosecuted by the state in an administrative enforcement action shall not be the subject of a "civil penalty action" brought pursuant to 33 U.S.C. Sec. 1365, but makes no mention of whether a citizen could otherwise bring an action for declaratory or injunctive relief. Section 1319(g)(6)(B) also refers to the limitation in subparagraph (A) on "civil penalty actions" under 33 U.S.C. Sec. 1365. By contrast, 33 U.S.C. Sec. 1365(a) clearly contemplates declaratory and injunctive relief, in addition to civil penalties, as possible remedies in citizen suits; it provides that "[t]he district courts shall have jurisdiction ... to enforce ... an effluent standard or limitation." AWF urges this Court to adopt the holding in Coalition for a Liveable West Side v. New York City Dep't of Envtl. Protection, 830 F.Supp. 194, 196-97 (S.D.N.Y.1993). In that case, the district court rejected the contrary holding in Scituate as follows:
 
 
 25
 I find no basis for the First Circuit's redrafting of the statute. The language of Sec. 1319(g)(6) is clear and unambiguous. Its bar applies only to civil penalty actions. Nor do I find any basis for the assertion that such a rule is irrational. As written, Sec. 1319(g)(6) ensures that an entity that has violated the CWA will not be subject to duplicative civil penalties for the same violations. On the other hand, the statute permits a federal district court to entertain an action for injunctive relief for situations where, for example, a permit holder may have paid the relevant civil penalties but continues to violate its permit limitations or where the injunctive relief obtained in the state proceedings turns out to be inadequate to address the violations at issue.
 
 
 26
 830 F.Supp. at 197.
 
 
 27
 ICI, in response, relies heavily on Scituate. The First Circuit reasoned in Scituate that, in spite of the plain language of the statute, it would be not only "undesirable," but "absurd," to preclude citizens' claims for civil penalties, but not declaratory and injunctive relief. 949 F.2d at 557-58. ICI also relies on Gwaltney, in which the Supreme Court held "[33 U.S.C. Sec. 1365] does not authorize civil penalties separately from injunctive relief; rather the two forms of relief are referred to in the same subsection, even in the same sentence." 484 U.S. at 58, 108 S.Ct. at 382.[6]
 
 
 28
 We do not go so far as to say that it would be "absurd" to preclude citizens' claims for civil penalties without also precluding claims for declaratory and injunctive relief under the same circumstances. However, we agree with the First Circuit's assessment of such a result as "unreasonable." Allowing suits for declaratory and injunctive relief in federal court, despite a state's diligent efforts at administrative enforcement, could result in undue interference with, or unnecessary duplication of, the legitimate efforts of the state agency. We believe that such a result would undermine, rather than promote, the goals of the CWA, and is not the intent of Congress. Accordingly, we hold that the district court did not err in dismissing AWF's entire action, including its claims for declaratory and injunctive relief.
 
 
 29
 For the foregoing reasons, the order of the district court is affirmed.
 
 
 
 [1]
 The Honorable Stephen M. Reasoner, Chief Judge, United States District Court for the Eastern District of Arkansas
 
 
 [2]
 The State did not grant the revised NPDES allegedly because at that time EPA was in the process of changing the federal standards for metals, including zinc
 
 
 [3]
 Subsections 1319(g)(6)(A)(ii) and (iii) provide in pertinent part:
 (6) Effect of order
 (A) Limitation on actions under other sections
 Action taken by the Administrator or the Secretary, as the case may be, under this subsection shall not affect or limit the Administrator's or Secretary's authority to enforce any provision of this chapter; except that any violation--
 (ii) with respect to which a State has commenced and is diligently prosecuting an action under a State law comparable to this subsection, or
 (iii) for which the Administrator, the Secretary, or the State has issued a final order not subject to further judicial review and the violator has paid a penalty assessed under this subsection, or such comparable State law, as the case may be,
 shall not be the subject of a civil penalty action under subsection (d) of this section or section 1321(b) of this title or section 1365 of this title.
 
 
 [4]
 On this appeal, amicus briefs have been filed by the United States Department of Justice in support of AWF, and a coalition of trade associations and corporations in support of ICI. For the sake of simplifying the discussion, arguments of amici are incorporated into the arguments of the parties
 
 
 [5]
 AWF also argues that the district court's reliance on 40 C.F.R. Sec. 123.27 as support for its comparability finding is misplaced because that regulation refers to EPA's requirements for delegating NPDES permitting authority to the states, not the standard for precluding citizen suits, which are specifically intended to complement federal and state agency enforcement. We agree with AWF that 40 C.F.R. Sec. 123.27 is not particularly germane to the comparability analysis for purposes of applying 33 U.S.C. Sec. 1319(g)(6)(A)(ii)
 
 
 [6]
 AWF distinguishes the present case from Gwaltney on grounds that, in Gwaltney, the Supreme Court addressed whether civil penalties could be sought in the absence of a claim for injunctive relief, not the converse situation presented here. In the present case, the issue is whether declaratory and injunctive relief may be sought in the absence of a claim for civil penalties