**Rudolph JONES, Jr.; Susan Jones; Tandy Jones Gilliland, Plaintiffs–Appellants,**

v.

**CITY OF LAKELAND, Tennessee, a Tennessee Municipal Corporation, Defendant–Appellee.**

No. 97–5917.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 5, 1998.

Decided April 20, 1999.

Saul C. Belz (argued and briefed), David A. McLaughlin (briefed), Memphis, TN, for Plaintiffs–Appellants.

Richard L. Winchester, Jr. (argued and briefed), The Winchester Law Firm, Memphis, TN, for Defendant–Appellee.

Before: KRUPANSKY, NORRIS, and SILER, Circuit Judges.

NORRIS, J., delivered the opinion of the court, in which SILER, J., joined. KRUPANSKY, J. (pp. 417–422), delivered a separate dissenting opinion.

## OPINION

ALAN E. NORRIS, Circuit Judge.

Plaintiffs Rudolph Jones, Jr., Susan Jones, and Tandy Jones Gilliland, three Tennessee citizens, filed suit against the City of Lakeland, Tennessee, to enforce provisions of the Federal Water Pollution Control Act ("Clean Water Act"), 33 U.S.C. § 1251–1376 (1988). In their complaint, plaintiffs alleged that the city was discharging pollution into Tennessee waterways in violation of its National Pollutant Discharge Elimination System ("NPDES") permit. The district court granted the city's motion to dismiss pursuant to 33 U.S.C. § 1365(b), concluding that the court lacked subject matter jurisdiction over plaintiffs' suit. Although we disagree with the court's rationale, we nevertheless affirm the court's decision because the court lacked subject matter jurisdiction over this matter in view of the limitations placed by 33 U.S.C. § 1319(g)(6) on the institution of lawsuits by citizens to enforce provisions of the Clean Water Act.

## I.

In their complaint, plaintiffs alleged that the city violated the Clean Water Act and the Tennessee Water Quality Control Act ("TWQCA"), Tenn.Code Ann. §§ 69–3–101—131 (1997), by discharging impermissible amounts of waste into Oliver Creek. The city held a NPDES permit authorizing it to discharge waste from its stabilization lagoon into Oliver Creek at a rate not to exceed 62,000 gallons a day.[1] The city had obtained the permit from the permit's previous holder, Lakeland Development Corporation, which, during the time it held the permit, was cited on more than one occasion by the Tennessee Department of Environment and Conservation ("the TDEC") for violating the permit's provisions regarding authorized amounts of discharge.

Like its predecessor, the city had been cited on two occasions by the TDEC for exceeding the limits of the NPDES permit. On November 22, 1994, the city and the TDEC entered into their third agreed order in which the city pledged to eliminate all discharge from the waste stabilization lagoon into Oliver Creek by March 1, 1996.[2] In hopes of remedying the pollution problem, the city committed to building a new basin. Due to unforeseen problems, however, the construction of the basin was delayed and the March 1, 1996, deadline passed with the city still discharging waste into Oliver Creek. Ultimately, on August 26, 1996, the TDEC issued a fourth order requiring the city to cease all discharge by July 1, 1997, and

1. The permit, issued on December 30, 1991, expired on December 30, 1996.

2. The order also called for a fine of up to $15,000 if the city failed to comply with the order.

3. Plaintiffs alleged standing based upon the fact that Oliver Creek runs through property owned by them.

4. The city argues that this court lacks jurisdiction to hear this appeal. It bases this assertion upon the fact that although the district court issued its order for dismissal on June 17, 1997, and plaintiffs filed their notice of

fining the city $4,000 with the possibility of additional fines totaling $26,000.

On September 30, 1996, plaintiffs filed this action.[3] The city filed a motion to dismiss arguing that the Clean Water Act did not permit the filing of enforcement actions by citizens when the Administrator of the federal Environmental Protection Agency ("EPA") or a particular state is already prosecuting a parallel action. In response, plaintiffs argued that the limitation applies only when the government is "diligently prosecuting" a claim in a "court." 33 U.S.C. § 1365(b)(1)(B). According to plaintiffs, the TDEC failed to take effective action against the city even though the city had violated the third agreed order, and that any action that had been taken by the TDEC was not pursued in a state or federal court but consisted merely of administrative sanctions.

The district court granted the city's motion to dismiss for lack of subject matter jurisdiction. The court held that the TDEC was diligently prosecuting a civil action against the city and that plaintiffs had "failed to show, or even argue, that the TDEC is not a court." Plaintiffs now appeal.[4]

## II.

*A. Standard of Review*

Holding that it did not have subject matter jurisdiction over plaintiffs' action, the district court dismissed the case pursuant to Federal Rule of Civil Proce-

appeal on July 17, 1997, the district court did not render its judgment until July 24, 1997. The city contends that because plaintiffs failed to appeal from the subsequent judgment, we thus lack jurisdiction to hear the appeal. Federal Rule of Appellate Procedure 4(a)(2) states that "[a] notice of appeal filed after the court announces a decision or order but before the entry of the judgment or order is treated as filed on the date of and after the entry." Fed. R.App. P. 4(a)(2). Thus, plaintiffs were not required to file another notice of appeal and the matter is properly before this court.

dure 12(b)(1). When subject matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction in order to survive the motion. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir.1990). The city argues that the facts alleged by plaintiffs in their complaint are insufficient to establish subject matter jurisdiction. In reviewing such a facial attack, a trial court takes the allegations in the complaint as true, a similar safeguard to that employed under 12(b)(6) which governs motions to dismiss. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990). Any factual findings made by the district court in resolving a motion to dismiss are reviewed only for clear error. *Gafford v. General Electric Co.*, 997 F.2d 150, 161 (6th Cir.1993). Of course, we review de novo a district court's determination on the issue of subject matter jurisdiction. *Greater Detroit Resource Recovery Auth. v. EPA*, 916 F.2d 317, 319 (6th Cir.1990).

### B. *33 U.S.C. § 1365*

■ The Clean Water Act, in requiring states to establish water pollution prevention programs in compliance with federal laws and regulations, allows states to issue NPDES permits. 33 U.S.C. § 1342(b). An NPDES permit allows the holder to discharge waste into a waterway at a daily level not to exceed the effluent limitations established by the permit. An entity holding a NPDES permit is subject to both federal and state enforcement actions, along with suits brought by citizens, to enforce the effluent limitations contained in each permit. 33 U.S.C. § 1365(a). Citizen suits, however, are merely intended to supplement, but not supplant, enforcement by state and federal government agencies. *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 60, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987). As a result, the Clean Water Act contains restrictions on the public's ability to bring enforcement suits. According to the citizen suit provision of the Clean Water Act, 33 U.S.C. § 1365(a), a citizen may commence a civil action on his own behalf, subject to limitations found in § 1365(b) and 33 U.S.C. § 1319(g)(6).

We first take up § 1365(b). That section provides the following:

> No action may be commenced ... if the Administrator [of the U.S. Environmental Protection Agency] or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any citizen may intervene as a matter of right.

33 U.S.C. § 1365(b). Thus, where a state has filed an action in a federal or state court to require compliance with a "standard, limitation, or order" and the action is being diligently prosecuted, § 1365(b) operates to bar parallel citizen suits. Relying upon § 1365(b), the district court dismissed plaintiffs' action.

### (1) *diligent prosecution*

■ In their complaint, plaintiffs alleged that the "TDEC failed to undertake any action to prevent or abate the continuing current discharge by [the city] into Oliver Creek from the existing stabilization lagoon and thereby allowed the wrongful discharge to increase." Plaintiffs' primary contention appears to be not that the TDEC is doing nothing but, rather, that its prosecution cannot be diligent if it continues to allow the city to dump impermissible amounts of waste into Oliver Creek and if its attempts to remedy the problem are limited to entering a series of ineffective administrative orders.

We cannot agree with plaintiffs' view of the record. In concluding that the state was in fact diligently prosecuting an action against the city, the district court noted that four orders had been entered between the city (or its predecessor in interest) and the TDEC, the last of which was on August 26, 1996, one month prior to plaintiffs' filing of this action. This latest

order required that the city be in full compliance with its NPDES permit by July 1, 1997. The court cited this fourth order as an example of the state's diligent prosecution of its action against the city. The record before this court on appeal further reflects that the city has attempted to comply with the orders and that the TDEC has extended deadlines in response to practical difficulties the city encountered in reaching full compliance. The fourth order required the city to pay a fine and provided for additional fines should the city fail to meet the full requirements of the order. The district court recognized that an enforcing agency must be accorded the latitude to respond to circumstances that delay remedial projects and warrant reassessment of compliance target dates. In using the term "diligently prosecuting," Congress did not contemplate the rigidity plaintiffs would have us visit upon the Act's enforcement scheme. It is clear that the TDEC is attempting to remedy the specific problems plaintiffs cite in their complaint. Accordingly, we are unable to say that the district court erred when it concluded that the TDEC's continued enforcement represents diligent prosecution as contemplated by the statute.

#### (2) action in court

█ Plaintiffs also contend that the administrative action taken by the TDEC against the city does not qualify as an "action in a federal or state court" to satisfy the requirements of § 1365(b)(1)(B). In dismissing plaintiffs' action, the district court explained that they had "failed to show, or even argue, that TDEC is not a court and that 33 U.S.C. § 1365, therefore, does not apply." While we do not take exception with the court's conclusion that plaintiffs defaulted in that regard, we cannot ignore the statute's unambiguous language that requires that an action be prosecuted in "a court" in order for the statute to apply. Neither the Administrator of the federal EPA nor the TDEC has initiated an action in any court in order to alleviate the discharge of waste into Oliver Creek. The enforcement actions taken by the TDEC against the city prior to the filing of this lawsuit amount simply to an exercise by the TDEC of its power as a state administrative agency charged by the state legislature to regulate water quality. While the term "court" may be susceptible to a number of interpretations, administrative proceedings involving the state's Water Quality Control Board or the TDEC in seeking to enforce the TWQCA against a suspected polluter unquestionably are not actions taken in court as contemplated by Congress when it enacted § 1365(b). *See Friends of the Earth v. Consolidated Rail Corp.*, 768 F.2d 57 (2d Cir.1985) (holding that an administrative board is not the equivalent of a "court" as defined by Congress in the Clean Water Act; rather, a "court" is a state or federal court, and nothing else).

#### C. 33 U.S.C. § 1319

█ We must now determine, as required by § 1365(a), whether 33 U.S.C. § 1319(g)(6) bars plaintiffs' action. Section 1319(g)(6)(A) provides, in relevant part, that

> [A]ny violation . . .
>
> (ii) with respect to which a State has commenced and is diligently prosecuting an action under a State law comparable to this subsection . . .
>
> . . . .
>
> shall not be the subject of a civil penalty action under subsection (d) of this section or section 1321(b) of this title or section 1365 of this title.

33 U.S.C. § 1319(g)(6)(A). Thus, once a state has commenced and is diligently prosecuting an action under a state law that is comparable to § 1319(g), a citizen suit is barred. *Id.; see also Knee Deep Cattle Co. v. Bindana Inv. Co.*, 94 F.3d 514, 516 (9th Cir.1996); *Arkansas Wildlife Fed'n v. ICI Americas, Inc.*, 29 F.3d 376, 379–80 (8th Cir.1994).

The district court declined to address the effect of § 1319(g)(6) because the city

had not relied upon it and because the court concluded that the motion could be decided based upon the restriction contained in § 1365(b). Having concluded that the district court erroneously relied upon § 1365(b), we are thus left to determine whether § 1319(g)(6) does in fact bar plaintiffs' action. Specifically, we must determine: (1) whether the TDEC is diligently prosecuting an action against the city; and (2) whether the TDEC is prosecuting that action under a state law comparable to § 1319(g). It is important to note that § 1319(g)(6) does not require that enforcement be undertaken in a court. Section 1319(g)(6)(A)(ii) precludes citizen suits that would be "duplicative of an 'administrative penalty action.'" *Citizens for a Better Env't v. Union Oil Co. of California,* 83 F.3d 1111, 1115 (9th Cir.1996). However, diligent prosecution is a requirement under both §§ 1365(b) and 1319(g)(6). Because we have already ratified the district court's determination that the TDEC's efforts constitute diligent prosecution, we are left only to decide whether the requirments of TWQCA are comparable to those found in § 1319(g).

We begin our analysis by reiterating the fundamental principal that citizen suits are "meant to supplement rather than to supplant governmental action." *Gwaltney,* 484 U.S. at 60, 108 S.Ct. 376. As a result, the "'great volume of enforcement actions [are intended to] be brought by the State,'" and thus "citizen suits are proper only 'if the Federal, State, and local agencies fail to exercise their enforcement responsibility.'" *Id.* (quoting S.Rep. No. 92-414, at 64 (1971), *reprinted in* 2 A Legislative History of the Water Pollution Control Act Amendments of 1972, at 1482 (1973)). When a state agency "has specifically addressed the concerns of an analogous citizen's suit, deference to the agency's plan of attack should be particularly favored." *North & South Rivers Watershed Ass'n v. Scituate,* 949 F.2d 552, 557 (1st Cir.1991). In view of the secondary nature of citizen suits and the deference afforded state agencies by Congress and other courts, a narrow, exacting interpretation of the word "comparable" that requires one-for-one equivalency would be inappropriate when comparing § 1319(g) with a state counterpart. The restrictions on citizen suits found in §§ 1365(b) and 1319(g)(6) are intended to prevent the filing of citizen actions that would be duplicative of ongoing state or federal agency action. The statutes also avoid presenting an offending party with inconsistent obligations imposed by a federal court, as a result of a citizen action, and by another court or administrative agency, as a result of an independent federal or state agency action. It is in this context that the TWQCA and § 1319(g) should be compared.

Having reviewed the provisions of both § 1319(g) and the TWQCA, we conclude that the two are "comparable" as the meaning of that term is contemplated in § 1319(g)(6). The overarching goals of the Clean Water Act and the TWQCA are the same: each seeks to abate existing water pollution, reclaim polluted waters, prevent future pollution, and plan for the future use of unpolluted water resources. 33 U.S.C. § 1251; Tenn.Code Ann. § 69-3-102(b). Section 1319(g) is concerned with the administrative penalties that attend violation of the Clean Water Act. Section 69-3-115 of the TWQCA likewise lists punishable violations and procedures for punishment. The conduct proscribed by both is remarkably similar.

In addition to the similarities in proscribed conduct, the enforcement schemes of the Clean Water Act and the TWQCA share significant commonalities. The Court of Appeals for the Eighth Circuit has articulated some important considerations for determining the comparability of a state clean water law and § 1319(g) of the Clean Water Act.

The common thread running through these cases is a finding that the overall regulatory scheme affords significant citizen participation, even if the state law does not contain precisely the same

public notice and comment provisions as those found in the federal CWA.... [T]he comparability requirement may be satisfied so long as the state law contains comparable penalty provisions which the state is authorized to enforce, has the same overall enforcement goals as the federal CWA, provides interested citizens a meaningful opportunity to participate at significant stages of the decision-making process, and adequately safeguards their legitimate substantive interests. Under those circumstances, the state statute should be presumed comparable unless the facts of the specific case demonstrate that the state denied an interested party a meaningful opportunity to participate in the administrative enforcement process.

*Arkansas Wildlife*, 29 F.3d at 381–82 (citations omitted). We agree that these are the relevant considerations in evaluating the comparability of the Clean Water Act and a state clean water law. In the following paragraphs, we evaluate each in turn.

The TWQCA provides interested citizens a "meaningful opportunity to participate" in the enforcement process first by allowing any person to file a signed complaint against anyone allegedly violating the provisions of the TWQCA. The TDEC must then act upon the complaint unless it finds the complaint to be "duplicitous or frivolous." Tenn.Code Ann. § 69–3–118(a)(1). A complainant may appeal to the Water Quality Control Board the resulting determination by the TDEC or the TDEC's failure to act. Tenn.Code Ann. § 69–3–118(a)(2) & (3). Moreover, when an administrative action by the TDEC is ongoing, with the Board overseeing the final action, Tennessee law requires that before a consent judgment is entered between the TDEC and an offending party, any citizen, within forty-five days, may intervene before the chancery court enters a final order. Tenn.Code Ann. § 69–3–115(e)(2). The chancery court has the power to determine whether the citizen intervention is frivolous or duplicitous.

Likewise, when an action is being overseen by the Board rather than the TDEC, Tennessee's Open Meetings Act requires that the public be allowed to attend proceedings, including meetings over final actions. Tenn.Code Ann. § 8–44–101–201 (1997).

We also note the similarities in the administrative penalties articulated in the TWQCA and the Clean Water Act. The Clean Water Act provides for threshold penalties of up to $10,000 per violation or $10,000 for each day during which a violation continues, depending upon whether the penalty is a class I or class II civil penalty. 33 U.S.C. § 1319(g)(2)(A)(B). In assessing such a penalty, the Administrator or Secretary is authorized to take into account such factors as "the nature, circumstances, extent and gravity of the violation, or violations, and, with respect to the violator, ability to pay, any prior history of such violations, the degree of culpability, economic benefit or savings (if any) resulting from the violation, and such other matters as justice may require." 33 U.S.C. § 1319(g)(3). Similarly, the TWQCA allows for a civil penalty of up to $10,000 per day for each day during which a violation of state law occurs. Tenn.Code Ann. § 69–3–115(a)(1). In assessing this penalty, the commissioner is authorized to consider factors similar to those enumerated in the Clean Water Act. *See* Tenn.Code Ann. § 69–3–115(a)(3)(A–H). The TWQCA also allows for a fine of $25,000 and possible incarceration against anyone intentionally failing to comply with state law, falsifying information submitted to the state, or polluting the waters of the state. Tenn.Code Ann. § 69–3–115(c).

In summary, the overall goals of the Clean Water Act and the TWQCA are comparable, as are the enforcement procedures for obtaining those goals. Doubtlessly, the "overall scheme of the two acts is aimed at correcting the same violations, thereby achieving the same goals," and therefore, because plaintiffs seek to remedy a situation "already in the process of being remedied by [the TDEC]," we hold

that the TWQCA is comparable to 33 U.S.C. § 1319(g) of the Clean Water Act. *See North & South Rivers,* 949 F.2d at 556. Because the TWQCA is a state law comparable to § 1319(g), and the state is diligently prosecuting an action against the city under this state law, § 1319(g)(6)(A)(ii) bars plaintiffs' action.

## III.

For the foregoing reasons, the order of the district court is **affirmed.**

KRUPANSKY, Circuit Judge, dissenting.

Briefly summarized, this is a case initiated by Rudolph Jones, Jr., Susan Jones, and Tandy Jones Gilliand (collectively "the plaintiffs"), riparian land owners in fee simple along Oliver Creek, a natural water course that traverses their real property within the city of Lakeland, Tennessee ("the City"), according them "standing" to commence this legal action seeking redress against the City for its continuing practice of discharging hazardous pollutants into Oliver Creek, exceeding the amount permitted by its National Pollutant Discharge Elimination System Permit (NPDES permit), in violation of the Water Pollution Control Act ("the Clean Water Act"), 33 U.S.C. §§ 1254–1376, and the Tennessee Water Control Act ("the Tennessee Water Act"), Tenn.Code Ann. §§ 69–3–101 to 131.

The district court dismissed the plaintiffs' complaint concluding that it lacked subject matter jurisdiction over the plaintiffs' claim. The panel majority of this court has affirmed the trial court's disposition for jurisdictional reasons other than those articulated by the district court.

As distinguished from a Rule 56 motion (Fed.R.Civ.P.) for summary judgment,[1] judicial review of the defendant's instant Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction and 12(b)(6)

Motion to Dismiss for Failure to State a Claim upon which Relief can be Granted, considered by both the district and this court, must be *confined to the four corners of the factual allegations in the complaint, which must be accepted as true and construed in the light most favorable to the plaintiff.* Dismissal is proper if, *and only if,* the factual allegations of the complaint, after having been accepted as true and construed most favorably on behalf of the plaintiffs, *would not constitute a cognizable claim and would not entitle the plaintiffs to the relief they seek.* Stated differently, if the factual allegations of the complaint, after having been accepted as true and construed most favorably on behalf of the plaintiffs, present a cognizable claim if proved by a preponderance of the evidence, the court's review need not continue. It is concluded. It is at an end.

Mindful of the *de novo* reviewing authority of this court in considering Rule 12(b)(1) & (6) motions to dismiss for lack of jurisdiction and plaintiffs' burden of proving jurisdiction, I must nevertheless respectfully dissent because:

1. the panel majority has strayed beyond the four corners of the complaint by considering factual responses and conclusions advanced by the defendant; and

2. the panel majority has not accepted the allegations of the complaint, when considered in their entirety and in context, as true; and

3. the panel majority has not construed the allegations of the complaint, when considered in their entirety and in context, in a light most favorable to the plaintiffs; instead

   (a) it has erroneously considered only selected pleaded allegations, and ignored other equally well-pleaded allegations of the complaint in resolving that of official administra-

---

[1] It is highly questionable if this case, in its present posture, could support consideration of a Rule 56 motion for summary judgment.

tive action implemented by the Tennessee Department of Environment and Conservation (TDEC) against the City, constituted "diligent prosecution as contemplated by the statute [33 U.S.C. § 1365(b) ]," majority opinion p. 414; and

(b) it refused to accept as true, and to construe in a light most beneficial to the plaintiffs their allegations of collusive, dilatory, wilfully negligent, and other bad faith activity implemented by the defendant and the TDEC, as demonstrated by its Commissioner, Justin P. Wilson, to pursue "an internal administrative policy *not* to aggressively enforce the provisions of the TWQCA"; and

4. the panel majority has relied upon *Arkansas Wildlife Federation v. ICI Americas, Inc.,* 29 F.3d 376, 381–82 (8th Cir.1994), without recognizing how it is distinguished from the instant case, erroneously concluding that the Tennessee Water Quality Control Act and the Clean Water Act are comparable; and

5. the panel majority has denied the plaintiffs effective relief delegated to them by the Clean Water Act; and

6. the panel majority has denied the plaintiffs access to both the state and federal courts.

Before considering the panel majority's misconceptions and erroneous conclusions, it is noted that it correctly observed that "[n]either the Administrator nor the TDEC have initiated an action in any court [Federal or State] in order to alleviate the discharge of waste into Oliver Creek." Majority opinion p. 414.

It also correctly noted that the only enforcement action undertaken by the state against the city has been by the TDEC. "The enforcement actions taken by the TDEC against the city prior to the filing of this lawsuit amount simply to an

exercise by the TDEC of its power as a state administrative agency charged by the state legislature to regulate water quality." Majority opinion p. 414.

The panel majority also rightly observed that:

While the term "court" may be susceptible to a number of interpretations, administrative proceedings involving the state's Water Quality Control Board or the TDEC in seeking to enforce the TWQCA against a suspected polluter unquestionably *are not* actions taken in court as contemplated by Congress when it enacted § 1365(b). *See Friends of Earth v. Consolidated Rail Corp.,* 768 F.2d 57 (2d Cir.1985) (holding that an administrative board is not the equivalent of a court as defined by Congress in the Clean Water Act; rather a "court" is a state or federal court, and nothing else.)

Majority opinion p. 414 (emphasis added).

Accordingly, the panel majority properly concluded that "we cannot ignore the statute's unambiguous language that requires that an action be prosecuted in 'a court' in order for the statute to apply." Majority opinion p. 414. The referenced statute is § 1365(b)(1)(B), which incidentally is the statute that the TDEC and the city have manipulated to systematically erect an impregnable procedural barrier to deny the plaintiffs access to the courts to seek judicial relief from their grievances as intended by Congress. They have adroitly projected an illusion of diligently prosecuting an ongoing parallel state action against the City under a comparable state legislative enactment, namely, the Tennessee Water Quality Control Act whereas, in reality, the administrative action of the TDEC over the ten years embraced by the complaint constituted a calculated charade, as hereinafter more fully discussed.

The statute in issue provides:

No action may be commenced—

(1) under subsection (a)(1) of this section—

(B) if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States *any citizen may intervene as a matter of right.*

33 U.S.C. § 1365(b)(1)(B) (emphasis added).

Pursuant to the directive of the statute, absent enforcement action initiated by the Administrator or a State, in this case, the TDEC and/or the Tennessee Water Quality Control Board, in a court, either state or federal, this appellate review must determine in the first instance if the factual allegation of the complaint *when accepted as true* and *construed in a light most favorable to the plaintiffs,* invokes federal court jurisdiction under circumstances where a parallel state action has been commenced under a state legislative enactment that is purportedly *comparable* to the Federal Clean Water Act more specifically, for purposes of the instant case, § 1365 *et seq.,* and is being diligently prosecuted.[2]

Facially, ¶¶ 5 through 31 of the complaint provide an official ten-year history of a relationship that originated as a conflict between the Lakeland Development Corp. (LDC), a privately owned and operated company, and the Tennessee Department of Conservation (TDC), the predecessor of the TDEC, which arose from inspections conducted by the TDC monitoring the discharge of noxious, human, toxic, and other hazardous waste water into Oliver Creek pursuant to a National Pollution Discharge Elimination System (NPDES) permit originally issued by the City of Lakeland to its predecessor in interest, the Lakewood Development Corp., on March 31, 1987 to compel the enforcement of the Clean Water Act and the State Water Act. A relationship continued between the TDEC and the City of Lakeland after the City acquired the operation of the Lakeland Development Corp. on April 25, 1992. The plaintiffs have never been, nor are they presently a party to, nor have they been permitted to intervene or participate in, the ongoing purported administrative enforcement proceedings between the City and the TDEC, because of the "citizen participation" limitations imposed by 33 U.S.C. § 1319(g)(6) and invoked by the defendant in the instant case.

Relying upon the district court's conclusions that four non-compliance orders issued by the TDEC during the more than ten years of its administrative enforcement oversight of the continuing pollution of Oliver Creek, the latest dated August 26, 1996, mandating the City's full compliance by July 7, 1997 with the NPDES permit it issued ten years earlier on March 31, 1987, and relying upon selected allegations, taken out of context of the complaint when viewed in its entirety, and by ignoring equally well-pleaded factual overt acts of the complaint, which alleges that the TDEC had (1) "adopted [an] internal administrative policy *not* to aggressively enforce the provisions of the State Water Act." (Complaint ¶ 49, *see also* attached Exhibits G & H); (2) extended its enforcement activity over an inordinately long ten-year period by non-productive, superficial, cursory enforcement activity; (3) issued innumerable compliance deadline extensions; (4) condoned the discharge of existing volumes of contaminated sewage, sludge, and other toxic, noxious, and hazardous substances that constitute an imminent risk to human health and wildlife in

---

**2.** The issue of "diligent prosecution" is a factual one that has not been explored or developed by discovery or other evidentiary proceedings in the instant case. The panel majority's conclusion "that the TDEC's continued enforcement represents diligent prosecution as contemplated by the statute," majority opinion p. 414, is a conclusion derived from its erroneous interpretation of selected allegations taken out of context when the complaint is considered in its entirety.

and about Oliver Creek, and permitted in its fourth and latest order, dated August 26, 1996, the "Respondent [the City] ... to *increase* the volume of the waste water flow into the stabilizing lagoon [that feeds Oliver Creek] by continuing to make connections and/or line extensions to its wastewater collection system" (Complaint ¶ 47 & attached Exhibit "F"); (5) issued countless never-enforced violation notices; (6) imposed and collected total monetary penalties of $18,000.00 in lieu of punitive civil penalties of $10,000.00 per violation day, intended as the escalating economically feasible incentive to ensure timely compliance to correct the city's ongoing violations;[3] and (7) failed to enforce any of the four orders of compliance identified and relied upon by the district court, and accepted by the panel majority to support its conclusion that "the TDEC['s] continued enforcement represents 'diligent prosecution,' as contemplated by the statute." Majority opinion p. 414.

Awareness of accepted evidentiary precedent that the term "diligent prosecution" is a factual concept to be supported by the weight of developed evidence, and sensitivity to the procedural legal barriers that have precluded the plaintiffs the opportunity to develop any evidence to support its well-pleaded allegations when accepted as true and construed in a light most favorable to the plaintiffs, disclose a ten-year course of conduct pursued by the defendant City and the TDEC, the State's administrative agency charged with enforcing the TWQCA, which if proved by the weight of evidence, constitutes a cognizable claim that warrants exploring the issue of "diligent prosecution" by the parties before the district court. I would, accordingly, remand the issue of diligent prosecution to the district court for further proceedings not inconsistent with the hereinabove observations.

Basically, the panel majority's comparative analysis correctly concludes that the Clean Water Act and the Tennessee Water Quality Act are comparable, with one material exception. Unlike the Clean Water Act, the state TWQCA does not afford *mandated citizen participation in an enforcement proceeding as a matter of right.*

> No action may be commenced ... if the Administrator [of the U.S. Environmental Protection Agency] or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order, *but in any such action in a court of the United States any citizen may intervene as a matter of right.*

33 U.S.C. § 1365(b)(1)(b) (emphasis added). The significance of this material element of the Clean Water Act was emphasized by the Eighth Circuit when it decided that:

> The common thread running through these cases is a finding that the overall regulatory scheme affords significant citizen participation, even if the state law does not contain precisely the same public notice and comment provisions as those found in the federal CWA.... [T]he comparability requirement may be satisfied so long as the state law contains comparable penalty provisions which the state is authorized to enforce, has the same overall enforcement goals as the federal CWA, provides interested citizens a meaningful opportunity to participate at significant states of the decision-making process, and adequately safeguards their legitimate substantive interests. Under those circumstances, the state statute should be presumed comparable *unless the facts of the specific case demonstrate that the state denied an interested party a meaningful oppor-*

---

**3.** Exhibits attached to the complaint disclose that, during ten years of noncompliance, the TDEC had levied approximately $50,000.00 in various token increments of which only $18,-000.00 has been collected. In contrast, ap-

proximately $1,940.000.00 in penalties could have been levied against the city for violations that occurred during the 194 days between March 29 and November 30, 1996. (*See* Exhibit D at J.A. 48, 50, Exhibit E–2 at J.A. 54).

*tunity to participate in the administrative enforcement process.*

*Arkansas Wildlife Federation v. ICI Americas,* 29 F.3d 376, 381 (8th Cir.1994) (internal citations omitted) (emphasis added). The TWQCA requires no public notice of hearings, nor does it require the State to extend third-parties an opportunity to join mandatory controversial issues seeking justiciable resolution such as the enforcement proceeding and consent orders similar to those unilaterally considered and decided by the TDEC. Nor does the Tennessee Open Meetings Act, Tenn. Code Ann. § 8–4–101 to 201 (1997), mandate procedures for public participation in an ongoing enforcement prosecution under the TWQCA by TDEC or before the Water Quality Control Board. By artfully invoking the jurisdictional rule of "diligent prosecution" in an ongoing enforcement action and the discretionary authority of the TDEC to declare citizen or public participation as "duplicitous or frivolous," Tenn.Code Ann. § 69–3–118–(a)(1), the plaintiffs have been frozen out of commencing an original action of their own, or intervening in the purported ongoing State enforcement action.

The only window for redress available to the plaintiffs in the instant case, as observed by the panel majority, occurs "when an administrative action by the TDEC is ongoing, with the [Water Quality Control] Board overseeing the final action, Tennessee law requires that before a consent judgment is entered between the TDEC and an offending party [the City defendant], any citizen, within forty-five days, *may intervene before the chancery court enters a final order.*" Tenn.Code Ann. § 69–3–115(e)(2) (Emphasis added). *See* majority opinion p. 416.[4]

The precise language of Tennessee Code. § 69–3–115(e)(2) presupposes that a final order of the TDEC has been filed with the chancery court as a condition precedent to invoking its jurisdiction. Apparent from Tennessee public records, *not one of the four orders* issued by the TDEC and/or Water Quality Control Board, relied upon by the district court and the panel majority in arriving at their respective decisions, *were filed with the chancery court by the State or any of its agencies during the ten or more years of this ongoing enforcement proceeding.* (J.A. at 100).

Patently obvious from the record in the instant case, depending upon plaintiffs' ability to develop persuasive evidence to support their allegations, which they have been thus far precluded from doing, is a ten-year calculated pattern of conduct that could be considered as dilatory, collusive, or otherwise implemented in bad faith. *See Connecticut Fund for the Environment v. Contract Plating Co.,* 631 F.Supp. 1291, 1293 (D.Conn.1986). That the concerted course of conduct between the state and the defendant City has been implemented under color of law deliberately reflects a bad faith effort to deny the plaintiffs *"a meaningful opportunity to participate in the administrative enforcement of process." Arkansas Wildlife Federation,* 29 F.3d at 382 (emphasis added).

Accordingly, I would reverse the district court's decision, and remand this case for further proceedings not inconsistent with this dissent because the Tennessee Water Quality Control Act and the Federal Clean Water Act are not comparable for the reasons hereinbefore discussed, and to provide the plaintiffs a judicial forum be-

---

**4.** If, as also noted by the panel majority, "when an action is being overseen by the Board [Water Quality Control] Board rather than the TDEC, Tennessee's Open Meetings Act requires that the public be allowed to attend *proceedings,* including meetings over final actions." Tennessee Code Ann. § 8–44–101–201 (1997) (Emphasis added). Compliance with said sections is also vested in the

chancery courts. Public attendance is, however, limited to *commentary* without an opportunity to invoke adversary, mandatory consequences. These sections provide no justiciable relief for these plaintiffs. Reference to these sections in the panel majority's opinion is, accordingly, redundant, and of no legal significance. Majority opinion p. 416.

fore which to develop evidence of whether or not the State's enforcement action has been "diligently prosecuted." Otherwise, the nonproductive enforcement efforts of the TDEC, which may continue into perpetuity, will unjustly prevent the plaintiffs from petitioning for judicial relief as long as the subject state administrative action continues.