[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 02-10149

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 23, 2003
THOMAS K. KAHN
CLERK

D.C. Docket No. 01-01045-CV-PT-M

KIM MCABEE,

Plaintiff-Appellee,

versus

FORT PAYNE, CITY OF,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Northern District of Alabama

_____

**(January 23, 2003)**

Before BIRCH, DUBINA and KRAVITCH, Circuit Judges.

KRAVITCH, Circuit Judge:

The question presented is whether the Alabama Water Pollution Control Act

(the "AWPCA"), Ala. Code §§ 22-22-1 to 22-22-14, and the Alabama Environmental

Management Act (the "AEMA"), Ala. Code §§ 22-22A-1 to 22-22A-16, constitute

"State law comparable" to subsection 309(g) of the federal Clean Water Act (the

"CWA"), 33 U.S.C. § 1319(g). Defendant-appellant City of Fort Payne, Alabama (the "City") appeals the denial of its motion for summary judgment. The district court found that the Alabama statutory scheme and the CWA are not comparable and, therefore, allowed plaintiff-appellee Kim McAbee to bring her citizen suit under the CWA. We affirm.

I.      BACKGROUND

The legislative history of subsection 309(g) of the CWA begins in 1972, the year that Congress enacted the first Federal Water Pollution Control Amendments.[1] This legislation, also known as the Clean Water Act, was intended to curb the damaging effects of water pollution on the environment. One way in which the CWA differed from previous congressional attempts to control water pollution was that it permitted private citizens—not just government agencies—to bring civil actions against alleged polluters. But Congress has placed certain limitations on the use of citizen suits, completely barring them in some circumstances. For example, under the original 1972 amendments, a private individual cannot bring a private suit if a state or the Administrator of the Environmental Protection Agency is diligently prosecuting

---

[1] Pub. L. No. 92-500, 86 Stat. 816 (1972) (codified as amended at 33 U.S.C. §§ 1251–1387 (1994)).

an action against an alleged polluter in state or federal court.[2]  The CWA's 1987 amendments extended the bar on citizen suits, instructing that an administrative penalty action is enough to preclude a citizen suit, provided that the state is "diligently prosecuting" the penalty action under a "State law comparable to [subsection 309(g)]."[3]  Since the 1987 amendments to the CWA, at least four other federal courts of appeals have grappled with the terms "diligently prosecuting" and "comparable" state law in interpreting the scope of citizen suits under the CWA.  The present case requires us to deal with the second of these terms and thereby set a standard for determining when "a State law" is "comparable" to subsection 309(g) of the CWA.

McAbee is a riparian landowner whose property abuts a tributary of Big Wills Creek in the vicinity of the Fort Wayne Waste Water Treatment Plant.  The City has a permit[4] authorizing it to discharge certain pollutants from the waste-treatment plant, subject to specific discharge and monitoring requirements.  The City has violated the permit's effluent limitations on several occasions, and at the time McAbee filed the complaint, the City was operating under an administrative enforcement order issued

---

[2] See 33 U.S.C. § 1365(b)(1)(B) (describing the circumstances in which court action will preclude citizen suits).

[3] See id. § 1319(g)(6)(A)(ii).

[4] The City's permit is National Pollutant Discharge Elimination System Permit AL002311, which was issued by the Alabama Department of Environmental Management on November 17, 1997.

3

by the Alabama Department of Environmental Management ("ADEM"). The enforcement order obligated the City to pay a $11,200 fine.

The enforcement order also required the City to give notice of the consent order in a newspaper of general circulation in the county where the violations occurred, and the City published a notice in the *Fort Payne Times Journal* on December 30, 1999. Although the notice identified the name of the plant where the violations occurred and the amount of the penalties, it did not identify the address of the plant, the nature of the violations, the waterways affected, or when the violations occurred. Further, the notice did not indicate that persons wishing to contest the penalty assessment had only fifteen days from the date of the notice to file an administrative appeal and gave only a mailing address for those wishing more information about the enforcement action.

McAbee claims that the City is again in violation of its water-discharge permit at the waste-treatment plant. McAbee filed her complaint against the City pursuant to the citizen-suit provisions of the CWA, 33 U.S.C. § 1365(a).[5] The City moved to

---

[5] Section 1365(a) provides in relevant part:

Except as provided in subsection (b) of this section and section 1319(g)(6) of this title, any citizen may commence a civil action on his own behalf—
    (1)    against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation . . . .

4

dismiss or, alternatively, for grant of summary judgment, and the district court treated the filing as a motion for summary judgment. The basis of the City's motion was that ADEM's enforcement order and enforcement actions against it satisfied the CWA's limitation-on-actions provisions, 33 U.S.C. § 1319(g)(6)(A).

The limitation-on-actions provisions bar citizen suits when, *under comparable state law*, a state has "commenced and is diligently prosecuting an action." 33 U.S.C. §§ 1319(g)(6)(A)(ii). The provisions also bar all claims for which "the State has issued a final order not subject to further judicial review and the violator has paid a penalty under . . . such comparable State law . . . ." Id. § 1319(g)(6)(A)(iii). In comparing 33 U.S.C. § 1319(g) with the Alabama statutes, the district court determined that although the penalty provisions of the federal and state enforcement schemes are comparable, the public-participation and judicial-review provisions of the statutes are not. Accordingly, the district court held that the AWPCA and AEMA are not comparable to § 1319(g) and denied grant of summary judgment.

Given that the interpretation of § 1319(g) is an issue of first impression in the Eleventh Circuit, and recognizing a split among the circuits, the district court certified the action for appeal to this court pursuant to 28 U.S.C. § 1292(b).

---

33 U.S.C. § 1365(a)(1).

## II. STANDARD OF REVIEW

We review the district court's denial of a motion for summary judgment de novo, viewing the record and drawing all reasonable inferences in the light most favorable to the nonmoving party. Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1311 (11th Cir. 2002). Summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

## III. ANALYSIS

The CWA generally authorizes a citizen to commence a civil action in federal court against any person who is alleged to be in violation of an effluent standard or limitation. 33 U.S.C. § 1365(a). But the City argues that two subsections of 33 U.S.C. § 1319(g)(6) bar McAbee from bringing some or all of her claims. Section 1319(g)(6) provides in relevant part:

**(A) Limitation on actions under other sections**

Action taken by the Administrator or the Secretary, as the case may be, under this subsection shall not affect or limit the Administrator's or Secretary's authority to enforce any provision of this chapter; except that any violation—

　　. . . .

6

(ii) with respect to which a State has commenced and is diligently prosecuting an action under a State law comparable to this subsection, or

(iii) for which the Administrator, the Secretary, or the State has issued a final order not subject to further judicial review and the violator has paid a penalty assessed under this subsection, or such comparable State law, as the case may be, shall not be the subject of a civil penalty action under subsection (d) of this section or section 1321(b) of this title or section 1365 of this title.

33 U.S.C. § 1319(g)(6)(A).

Courts that have addressed § 1319(g)(6)(A)(ii)—the "diligent-prosecution bar"—have interpreted the statute to bar citizen suits when three requirements are satisfied. First, the state must have "commenced" an enforcement procedure against the polluter. Ark. Wildlife Fed'n v. ICI Americas, Inc., 29 F.3d 376, 379 (8th Cir. 1994). Second, the state must be "diligently prosecuting" the enforcement proceedings. Id. at 380. Finally, the state's statutory enforcement scheme must be "comparable" to the federal scheme promulgated in 33 U.S.C. § 1319(g). Here, "comparability" is the only issue before the court with respect to § 1319(g)(6)(A)(ii).[6] If the AWPCA is comparable to the federal CWA, then the district court should have

---

[6] The requirements of "commencement" and "diligent prosecution" are not at issue in this appeal. Neither the CWA nor the Eleventh Circuit has defined what specific acts constitute "commencement," but most courts that have addressed the issue have concluded that issuance of an administrative consent order—like the one here—would satisfy the "commencement" requirement. See, e.g., Ark. Wildlife Fed'n v. ICI Americas, Inc., 29 F.3d 376, 379–80 (8th Cir. 1994). As for "diligent prosecution," the district court did a partial analysis of this requirement, but stated that additional discovery would be necessary before deciding whether Alabama was diligently prosecuting the action.

7

granted summary judgment for the City if § 1319(g)(6)(A)(ii)'s commencement and diligent-prosecution requirements were both satisfied.

"Comparability" is also the only issue before the court with respect to § 1319(g)(6)(A)(iii). Unlike subparagraph (ii), which can potentially bar an entire suit, subparagraph (iii) bars all *claims* for which "the State has issued a final order not subject to further judicial review and the violator has paid a penalty under . . . such comparable State law ...." 33 U.S.C. § 1319(g)(6)(A)(iii). There is no dispute that the consent order is a "final order not subject to further judicial review" or that the City has paid a penalty. Consequently, if Alabama's administrative enforcement scheme is "comparable" to § 1319(g), subparagraph (iii) would bar, and the district court should have granted summary judgment as to, at least some of McAbee's claims—namely, those claims that gave rise to the City's $11,200 penalty. McAbee's other claims would be barred only if the diligent-prosecution bar applied.

## A.    The Standard for Determining Comparability

In deciding whether the Alabama administrative scheme is comparable to § 1319(g), we must first adopt the proper standard for evaluating comparability. This requires a review of the background principles governing CWA citizen suits and an analysis of the standards that other courts of appeals have adopted.

8

*1.      Background Principles*

The text of the CWA and Supreme Court precedent suggest a broad interpretation of the phrase "comparable State law." In the declaration of goals and policy under the CWA, Congress expressly states that "[i]t is the policy of the Congress to recognize, preserve, and protect *the primary responsibility and rights of the States* to prevent, reduce, and eliminate pollution . . . ." 33 U.S.C. § 1251(b) (emphasis added). The text of § 1319(g) itself is also instructive: "the term 'comparable' means that the state law need only be sufficiently similar to the federal law, *not identical*." Ark. Wildlife Fed'n, 29 F.3d at 381 (emphasis added).

Furthermore, in examining the role that Congress intended citizen suits to play within the context of the CWA as a whole, the Supreme Court has declared that "the bar on citizen suits when governmental enforcement action is under way suggests that the citizen suit is meant to supplement rather than to supplant governmental action." Gwaltney of Smithfield v. Chesapeake Bay Found., 484 U.S. 49, 60 (1987). The Court instructed that citizen suits should not trespass the supplemental role envisioned for them with respect to section 505 suits, thereby "changing the nature of the citizen's role from interstitial to potentially intrusive." Id. at 61. Given that the primary function of the CWA's citizen-suit provision is to enable private parties to assist in enforcement efforts when federal and state

authorities appear unwilling to act, we note that a rigorous "comparability" standard would contravene congressional policy for the CWA.

### 2. *Standards Adopted by Other Courts*

In deciding what standard to apply, we look to other circuits for guidance. In <u>North and South Rivers Watershed Association v. Town of Scituate</u>, 949 F.2d 552 (1st Cir. 1992), the First Circuit held that a state was proceeding under comparable state law if three criteria were satisfied. First, the state statutory scheme under which the state is proceeding must contain penalty-assessment provisions "comparable to the Federal Act"; second, the state must be authorized to assess those penalties; and, finally, the "overall" state statutory scheme must focus on correcting the same violations that the CWA seeks to correct. <u>Id.</u> at 556.

Applying this standard, the First Circuit found the Massachusetts statutory scheme "comparable" to the CWA. In doing so, the court underscored two important bases for its holding. First, although the state statute must have administrative penalties comparable to those in subsection 309(g) of the CWA, it is not necessary that the state actually seek monetary penalties against the alleged polluter. <u>Id.</u> Second, when assessing whether the state public-participation provisions were comparable to those in the CWA, the court looked to the state's "overall" statutory enforcement scheme (including rights of intervention and to a hearing under

10

administrative-law statutes), not just to the particular statute under which the state commenced and prosecuted the enforcement action. See id. at 556 n.7.

The Eighth Circuit was the next circuit to interpret the meaning of comparability. In Arkansas Wildlife Federation v. ICI Americas, Inc., 29 F.3d 376 (8th Cir. 1994), the court essentially adopted the First Circuit's standard but added an additional requirement: that the state law "provide[] interested citizens a meaningful opportunity to participate at significant stages of the [administrative] decision-making process . . . ." Id. at 381. The Arkansas statute provided only an "ex post facto citizen's right to intervene, with no public notice at any time, and no opportunity to comment while the order is being proposed." Id. Still, the court decided that the federal and state statutes were comparable. Furthermore, like the First Circuit, the Eighth Circuit looked at the "overall regulatory scheme" in determining comparability. Id.

The Ninth Circuit's approach in Citizens for a Better Environment-California v. Union Oil Co. of California, 83 F.3d 1111 (9th Cir. 1996), used a test for comparability that is arguably more demanding than the standards adopted by the First and Eighth Circuits. Union Oil ("UNOCAL") had paid the California Regional Water Control Board $2 million as part of a settlement that, for five years, relieved UNOCAL from meeting the selenium limit prescribed in its emissions permit. When

an environmental-protection group brought a citizen suit against UNOCAL, the Ninth Circuit affirmed the district court's denial of UNOCAL's motion to dismiss pursuant to § 1319(g)(6)(A). The Ninth Circuit held that the state, in reaching the settlement with UNOCAL, had not proceeded under a state law comparable to the CWA. Although the penalty-assessment provisions of the California Water Act were comparable to those of the federal CWA, the court found that the settlement in question was reached pursuant to California Water Code § 13301, a statute that was merely related to the California Water Act. Because California Water Code § 13301 did not contain penalty provisions comparable to those in the CWA, the Ninth Circuit held that the bar on citizen suits did not apply.

The UNOCAL court specifically rejected the First Circuit's approach of looking at the entire state "statutory scheme" to see if there are penalty provisions comparable to the CWA's penalty provisions. It reasoned that a comparability assessment is conducted by examining the particular statutory enforcement provision under which the state acted, not the state statutory enforcement scheme as a whole. Id. at 1117. In addition to holding that the "comparable" state law must contain a penalty provision, the court held that a penalty must have been assessed before the bar on citizen suits can apply.

In Jones v. City of Lakeland, 224 F.3d 518 (6th Cir. 2000) (en banc), the Sixth Circuit became the most recent circuit court to address § 1319(g)'s comparability requirement. Like the First and Eighth Circuits, the Sixth Circuit looked at the overall state statutory scheme to determine whether state public-participation provisions were comparable to those of the CWA, see id. at 523–24 (analyzing opportunities for public participation pursuant to both the Tennessee Water Quality Control Act and the Tennessee Open Meetings Act), and also underscored the importance of giving citizens a "meaningful opportunity to participate at significant stages of the administrative decision-making process . . . ." Id. at 524.

Despite the similarity between the Sixth and Eighth Circuit standards, the Sixth Circuit applied the standard differently than the Eighth Circuit in Arkansas Wildlife Federation. The Eighth Circuit had held that the Arkansas clean-water law—which provided only an ex post facto citizen's right to intervene, with no public notice at any time, and no opportunity to comment while the order is being proposed—was comparable to the federal CWA. Ark. Wildlife Fed'n, 29 F.3d at 382. In contrast, the Sixth Circuit found that the Tennessee Water Quality Control Act, Tenn. Code Ann. §§ 69-3-101–.131, was not comparable to the federal CWA. The court based its conclusion on the fact that the state statutory scheme did not require

public notice of hearings or provide third parties with an opportunity to initiate or join enforcement proceedings and consent orders. Jones, 224 F.3d at 523.

### 3. *Our Standard*

Before announcing our standard for determining comparability, we reject the standard proposed by the amicus curiae, which would have us compare only the penalty provisions of the applicable federal and state laws. No case law supports imposing a standard that compares only the penalty-assessment provisions. Furthermore, the text of § 1319(g) suggests that it is necessary to consider the public-participation and judicial-review provisions as well. When referring to comparability, § 1319(g)(6) instructs that state law has to be comparable "to this subsection." See 33 U.S.C. §§ 1319(g)(6)(A)(ii), (iii). Unlike many of the other paragraphs in § 1319(g), paragraph (6) makes no references to particular paragraphs within the subsection. Instead, paragraph (6) refers to the subsection as a whole, which includes not only penalty-assessment provisions but also public-participation and judicial-review provisions. Id. This is strong textual evidence that Congress intended courts to consider all three classes of provisions when deciding whether state law is "comparable" to § 1319(g) of the CWA.[7]

---

[7] As discussed below, although the text appears to require consideration of all three classes of provisions, it does not indicate the relative importance of each class.

14

Section 1319(g)(6)(A)'s text suggests that it is appropriate to compare all three classes of provisions, but the statute is not clear about whether courts should (1) insist that each class of state-law provisions be roughly comparable to its corresponding class of federal provisions or (2) perform a balancing test that compares the overall effect of a state statutory regime against the overall effect of the federal CWA.[8] The text itself offers little guidance in making this decision. Section 1319(g)(6)(A)(ii) merely states that, for the diligent-prosecution bar to apply, the action must be prosecuted "under a State law comparable to this subsection . . . ." 33 U.S.C. § 1319(g)(6)(A)(ii).

As a rationale for applying an "overall" comparability test, the First Circuit suggested that the correct legal standard should be concerned primarily with "whether

---

[8] The statute is also unclear about which state-law provisions count as "a State law" for purposes of the § 1319(g)(6)(A) analysis: that is, whether to look to the state's "overall" statutory enforcement scheme in determining comparability or to look only to the particular statute under which the state commenced and prosecuted the enforcement action. Here, this means deciding whether to look not only to the AWPCA and the AEMA but also to provisions in the Alabama Administrative Code to assess Alabama's public-participation provisions. Other circuits have disagreed about whether the phrase "a State law" allows courts to consider a state's overall enforcement scheme when assessing comparability. Compare Jones, 224 F.3d at 523–24 (analyzing opportunities for public participation pursuant to both the Tennessee Water Quality Control Act and the Tennessee Open Meetings Act), with UNOCAL, 83 F.3d at 1117 (determining comparability by looking at the particular state enforcement provision involved rather than the state enforcement scheme as a whole). In fact, under the Ninth Circuit's rule in UNOCAL, the phrase "a State law comparable" might also limit us to looking to either the AWPCA or the AEMA, but not both.

We need not resolve this issue in the present case, because Alabama's public-participation provisions are not comparable to the corresponding federal provisions, whether or not we consider the public-participation provisions in the Alabama Administrative Code. For purposes of the present analysis, however, we will consider administrative-law provisions in assessing comparability.

15

corrective action already taken and diligently pursued by the [state] government seeks to remedy the same violations as duplicative civilian action." Town of Scituate, 949 F.2d at 556. The First and Eighth Circuits also highlighted the secondary nature of citizens suits and the deference that should be afforded state agencies. See id. at 557; Ark. Wildlife Fed'n, 29 F.3d at 380–82. These important considerations certainly militate toward adopting the loose, some might say nebulous, standard used by the First and Eighth Circuits to assess the "overall" comparability of state law and the federal CWA.

Nevertheless, we find the arguments against adopting such a loose standard more compelling. First, requiring compatibility between each class of provisions makes § 1319(g)(6) easier to apply. Under an "overall" balancing test for compatibility, judges would be forced to weigh incommensurable values[9]—for example, the positive value of identical penalty-assessment provisions against the negative value of starkly dissimilar public-participation provisions. The First Circuit was correct in asking whether the public-participation provisions of a "State Act adequately safeguard[ed] the substantive interests of citizens in enforcement actions." Town of Scituate, 949 F.2d at 556 n.7. But this standard gives little guidance as a

---

[9] Cf. Bendix Autolite Corp. v.Midwesco Enters., Inc., 486 U.S. 888, 897 (1988) (Scalia, J., concurring) ("[Although the] process is ordinarily called 'balancing' . . . [,] the scale analogy is not really appropriate, since the interests on both sides are incommensurate. It is more like judging whether a particular line is longer than a particular rock is heavy.")

16

touchstone.  Until clear precedents were established, each court applying § 1319(g)(6) could have varying conceptions about which of the citizens' interests are "substantive" and about when a state law's safeguards are "adequate."  With such an arbitrary standard, there is a danger that like cases would not be treated alike.

The second argument for requiring rough comparability between each class of provisions is that such a standard reduces uncertainty not only for courts but also for potential litigants, state administrative agencies, and state legislatures.  Though some uncertainty will remain about whether corresponding classes of provisions are themselves comparable, parties would no longer have to deal with the uncertainty produced by trying to weigh the "overall" effects of the two statutory regimes.

Finally, legislative history supports requiring rough comparability between each class of provisions.[10]  Senator John Chafee, the principal author and sponsor of the 1987 amendments to the CWA, stated:

> [T]he limitation of 309(g) applies only where a State is proceeding under a State law that is comparable to Section 309(g).  For example, in order to be comparable, *a State law must provide for a right to a hearing and for public notice and participation procedures similar to those set forth in section 309(g)*; it must include analogous penalty assessment factors and judicial review standards; and it must include provisions that are analogous to the other elements of section 309(g).

---

[10] Admittedly, though, the most reliable indicator of congressional intent is the language of the statute itself.

17

133 Cong. Rec. S737 (daily ed., Jan. 14, 1987) (emphasis added).

Accordingly, we hold that for state law to be "comparable," each class of state-law provisions must be roughly comparable to the corresponding class of federal provisions.

B.     *Applying the Standard*

Under the proposed standard, we must compare each class of state-law provisions to its federal analogue, at least until one class of provisions fails the comparability test.  Here, the penalty-assessment provisions are comparable.  The federal statutory scheme allows the Administrator or the EPA to assess either a Class I or a Class II civil penalty.  33 U.S.C. § 1319(g)(2).  A Class I penalty cannot exceed $10,000 per violation, with the maximum penalty capped at $25,000.  Id. § 1319(g)(2)(A).  A Class II penalty cannot exceed $10,000 per day, with the maximum penalty capped at $125,000.  Id. at § 1319(g)(2)(B).  By comparison, Alabama's statutory scheme allows a civil penalty of not less than $100 and not more than $25,000 for each violation.  Ala. Code § 22-22A-5(18)c.  The total penalty under this subsection is capped at $250,000.  Both regulatory regimes give their respective enforcement agencies discretion to assess administrative penalties within a comparable range and to use similar criteria when calculating penalties.  Compare 33

U.S.C. §1319(g)(3) <u>with</u> Ala. Code § 22-22A-5(18)c.  Therefore, we determine the penalty-assessment provisions to be "comparable."

The state and federal public-participation provisions, however, are not sufficiently comparable.  The federal statutory scheme provides "interested persons" with the right to public notice and an opportunity to comment, the right to present evidence if a hearing is held, and the right to petition for a hearing if one is not held. 33 U.S.C. § 1319(g)(4). Specifically, before issuing an order assessing a civil penalty, the Administrator or Secretary must provide public notice and a reasonable opportunity to comment on the proposed assessment to any interested person.  <u>Id.</u> § 1319(g)(4)(B).  The Administrator or Secretary is also required to give notice of any hearing about a penalty assessment to any person who commented on the proposed assessment.  <u>Id.</u>  Finally, if no hearing is held before the issuance of an order assessing a penalty, any person who commented on the proposed assessment may petition the Administrator or Secretary to set aside the order and hold a hearing on the penalty. <u>Id.</u> § 1319(g)(4)(C).

The Alabama statutes do not contain analogous public-participation provisions. Unlike the federal provisions that ensure public notice *before* issuance of penalty orders, the AEMA requires only ex post facto notice of enforcement action.  Notice comes in the form of a newspaper bulletin that must appear "no later than 15 days

after issuance of any such order … for one day in a newspaper of general circulation in the county where the violation has occurred." Ala. Code § 22-22A-5(18)a.4.

Furthermore, the Alabama statute allows the general public limited opportunities for participation in the administrative enforcement process. Only the alleged polluter is allowed to participate in penalty proceedings before issuance of a final order. The public may not intervene in pre-order proceedings and may not submit comments, present evidence, or request a hearing on a proposed assessment and order. Id. Once an order is final, only the violator and other persons "aggrieved" by the administrative action have the right to request a hearing to contest the order. Ala. Admin. Code r. 335-2-1-.02. Providing public notice only *after* enforcement decisions is problematic, but we are particularly troubled that the AEMA gives even "aggrieved" parties only fifteen days after the publication of newspaper notice to request a hearing to contest a penalty assessment. See Ala. Code § 22-22A-7(c)(1). As submitted in oral argument, the fifteen-day deadline makes "proper requests [for a hearing]," id. § 22-22A-7(c), nearly impracticable.

By comparison, the federal provisions allow members of the general public, even those who have not suffered a threatened or actual injury in fact, to participate

in the enforcement process.[11]  Additionally, we agree with McAbee's contention that a right to pre-order participation is markedly different from the right to post-decision participation.  In pre-order proceedings, an agency has not hardened its position, and interested persons are not subject to the same technical pleading requirements or burdens of proof that are imposed once the state has issued an order.  See Ala. Admin. Code r. 335-2-1-.21(4).

In holding that Alabama's public-participation provisions do not satisfy the standard for comparability, we emphasize that the standard of rough comparability between classes of provisions is not stringent.  The problem for the City in this case is that the differences in the statutes' public-participation provisions, as described above, strike at the heart of whether the statute "provides interested citizens a meaningful opportunity to participate at significant stages of the decision-making process."  Ark. Wildlife Fed'n, 29 F.3d at 381.  Because the public-participation provisions of Alabama law are not sufficiently comparable to the CWA's public-participation provisions, we hold that sections 1319(g)(6)(A)(ii) and 1319(g)(6)(A)(iii) do not preclude McAbee's citizen suit.  Consequently, we need not address the compatibility of the applicable statutes' judicial-review provisions.

---

[11] As the district court noted, Alabama law essentially bars the public from participating in hearings before ADEM, as the administrative code regulations governing such appeals provide only a limited right of intervention in these hearings.  See Ala. Admin. Code r. 335-2-1-.08.

21

IV. CONCLUSION

For the reasons stated, we AFFIRM the district court.