<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

PAPER, ALLIED-INDUSTRIAL,
CHEMICAL AND ENERGY
WORKERS INTERNATIONAL
UNION and PONCA TRIBE,

      Plaintiffs-Appellees,

v.

CONTINENTAL CARBON
COMPANY,

      Defendant-Appellant,

and

OKLAHOMA DEPARTMENT OF
ENVIRONMENTAL QUALITY;
ENVIRONMENTAL FEDERATION
OF OKLAHOMA; ENVIRONMENT
COLORADO; NEW MEXICO
PUBLIC INTEREST RESEARCH
GROUP; UNITED STATES PUBLIC
INTEREST RESEARCH GROUP;
THE SIERRA CLUB,

      Amici Curiae.

No. 03-6243

---

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 02-CV-1677-R)**

---

Malcolm E. Wheeler, Wheeler Trigg & Kennedy, LLP, Denver, Colorado, (Darcy M. Goddard, Wheeler Trigg & Kennedy, LLP, Denver Colorado, and Mark D. Coldiron, Ryan, Whaley, Coldiron & Shandy, Oklahoma City, Oklahoma, and Jim T. Priest , McKinney & Stringer, P.C., Oklahoma City, Oklahoma, with him on the briefs) for Defendant-Appellant.

David Frederick, Frederick-Law, Austin, Texas, (Richard W. Lowerre, Lowerre & Kelly, Austin, Texas, and Rick W. Bisher, Ryan, Bisher & Ryan, Oklahoma City, Oklahoma, with him on the briefs) for Plaintiffs-Appellees.

Donald D. Maisch and Robert D. Singletary, Oklahoma City, Oklahoma, filed an Amicus Curiae brief for Oklahoma Department of Environmental Quality in support of Defendant-Appellant.

James R. Barnett, Kerr, Irvine, Rhodes & Ables, Oklahoma City, Oklahoma, filed an Amicus Curiae brief for Environmental Federation of Oklahoma, Inc., in support of Defendant-Appellant.

Charles C. Caldart, National Environmental Law Center, Seattle, Washington, filed an Amici Curiae brief for Environment Colorado, New Mexico Public Interest Research Group, United States Public Interest Research Group, and The Sierra Club in support of Plaintiffs-Appellees.

---

Before **EBEL, O'BRIEN**, Circuit Judges, and **STEWART,** District Judge.[*]

---

**EBEL**, Circuit Judge.

---

This case involves a citizen suit under the Clean Water Act ("CWA") brought pursuant to 33 U.S.C. § 1365(a) (2000).  The district court dismissed the suit under 33 U.S.C. § 1319(g)(6)(A)(ii), which deprives federal courts of

---

[*]Honorable Ted Stewart, District Court Judge, District of Utah, sitting by designation.

jurisdiction over CWA citizen enforcement actions when a state has commenced and is diligently prosecuting the same violations under a state law "comparable" to subsection 1319(g).

This court has not previously enunciated the proper standard for judging whether a particular state's laws are comparable to § 1319(g), and we take this occasion to do so. We hold that in order to satisfy 33 U.S.C. 1319(g)(6)(A)(ii), three categories of state-law provisions—penalty-assessment, public participation, and judicial review—must be roughly comparable to the corresponding categories of federal provisions. Applying this standard, we hold that Oklahoma's state-law provisions, and more particularly its public participation provisions, are comparable to § 1319(g) and therefore conclude that Oklahoma's proceedings bar federal jurisdiction under 33 U.S.C. § 1319(g)(6)(A)(ii) for claims pertaining to civil penalties.

Next, we turn to another question of first impression in this circuit: Whether the jurisdictional bar contained in 33 U.S.C. § 1319(g)(6)(A)(ii) applies to equitable relief in addition to civil penalty claims. Affirming the district court, we hold that the bar applies only to civil penalty claims and that Plaintiffs' equitable claims should not be dismissed for lack of jurisdiction.

## BACKGROUND

### I.     Factual Background

Defendant-Appellant Continental Carbon Company ("CCC") manufactures carbon black, a compound used in the manufacture of tires and other rubber and plastic products. Since 1954, CCC has maintained and operated a plant in close proximity to the Arkansas River in Ponca City, Oklahoma. Approximately ninety-five of the employees at CCC's Ponca City plant are members of the Paper, Allied-Industrial Chemical and Energy Workers International Union ("PACE"), a plaintiff in the instant case.[1]

CCC plant operations produce wastewater which is then discharged into retention lagoons along the plant's eastern side near the Arkansas River. Such activities require a permit from the Oklahoma Department of Environmental Quality ("ODEQ"), which CCC applied for and received in 1998.

In January 2002, PACE began voicing concerns with the wastewater disposal practices at CCC's Ponca City plant to ODEQ. Specifically, PACE representatives alleged in a citizen complaint that industrial wastewater was being discharged into the marsh area east of the lagoons and near the Arkansas River. This information prompted ODEQ to conduct an on-site evaluation at the Ponca

---

[1]The other plaintiff in this litigation is the Ponca Tribe, a sovereign Native American Nation with close ties to the area surrounding CCC's Ponca City facility.

City plant on January 9, 2002. The investigator noticed that the color of the water in the marshland was black, and oily substances were evident on the surface of the water. Samples taken from the marshland area had identical chemical components to samples taken from CCC's wastewater impoundments.

This investigation led ODEQ to issue a Notice of Violation ("NOV") to CCC. The NOV largely dealt with regulatory violations related to CCC's unauthorized discharges of polluted wastewater. CCC and ODEQ entered into a consent decree whereby CCC agreed to take a number of remedial measures, including an agreement to conduct a permeability study, submitting a water balance report, completing an approved Supplemental Environmental Project, and monitoring emissions from the facility.

Several months later, ODEQ also discovered a discrepancy in CCC's 1998 permit application related to the depth between the wastewater impoundments and the groundwater beneath the impoundments ("depth-to-groundwater"). In that permit application, CCC reported the depth-to-groundwater level for the impoundments as eighty feet. However, upon looking at data from other water wells in the vicinity, ODEQ believed the true depth-to-ground water level was less than fifteen feet. According to ODEQ's letter, placing a wastewater impoundment in an area with such a shallow depth-to-groundwater level violated Oklahoma law. CCC and ODEQ agreed to resolve the issues dealing with depth-

to-groundwater in an upcoming permit renewal process. On June 1, 2005, ODEQ issued CCC a new wastewater disposal/treatment permit, effective through May 31, 2010.[2]

Plaintiffs did not consider the matter closed. In a series of letters to ODEQ, they stated numerous objections to CCC's performance under the decree and ODEQ's enforcement thereof. Specifically, Plaintiffs objected to the fact that the consent decree called for an investigation that ignored the portion of CCC land where the violations took place. Plaintiffs also sought a meeting with ODEQ representatives and were turned away. The relationship between Plaintiffs and ODEQ continued to grow increasingly acrimonious, with ODEQ representatives restricting access to CCC records and refusing to divulge the substance of conversations with CCC officials on legal privilege and work product grounds. Finally, on June 19, 2002, Plaintiffs served notice of intent to sue upon the U.S. Attorney General, the EPA, the State of Oklahoma, and CCC.

## II. Procedural history

---

[2]Appellant submitted this permit to the court as an attachment to a Fed. R. App. P. 28(j) letter, which we construe as a motion to supplement the record. Because this document is relevant to our inquiry into whether any of Plaintiffs' claims are moot on appeal, we grant the motion. At oral argument, we raised sua sponte the issue of whether CCC's successful completion of the repermitting process could moot any portion of this lawsuit. Counsel submitted supplemental briefing at our request, and having reviewed those briefs, we are convinced that the case is not moot. Instead, we will proceed directly to the issues raised by the parties.

## A. The complaint

On November 26, 2002, Plaintiffs filed suit against CCC under section 505 of the Clean Water Act ("CWA"), 33 U.S.C. § 1365. Their first amended complaint outlines three claims: (1) unauthorized discharges of wastewater; (2) misrepresentation of facts in the 1998 permit application; and (3) failure to report unauthorized discharge in its lagoons, including but not limited to the discharges identified in Claim 1. In their prayer for relief, Plaintiffs requested the following:

1. A declaratory judgment that CCC violated the CWA and Oklahoma statutes through unsafe operation of its plant.
2. Civil Penalties authorized by the CWA up to a maximum of $25,000 per day per violation.
3. An injunction that would prohibit all unpermitted discharges and impose a compliance schedule on CCC.

## B. CCC's motion to dismiss

Before submitting its answer, CCC moved to dismiss for failure to state a claim and for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). CCC's argument was predicated on 33 U.S.C. § 1319(g)(6)(A)(ii), which states, in relevant part:

> [A]ny violation [of the Clean Water Act] . . . with respect to which a State has commenced and is diligently prosecuting an action under a State law comparable to this subsection . . . shall not be the subject of a civil penalty action under . . . section 1365 of this title.

In evaluating the motion to dismiss, the district court focused on whether Oklahoma law was "comparable" to the Clean Water Act. After reviewing the

factual materials provided by CCC and the relevant statutes, the court concluded that Oklahoma law was comparable and therefore that § 1319(g)(6)(A)(ii) applied to Plaintiffs' claims.

Next the court turned to the question of whether § 1319 barred only the civil penalty remedies or whether it also barred Plaintiffs' claims for injunctive and declaratory relief. Noting that "the plain language of Section 1319(g)(6) indicates that only civil penalty actions are precluded when the conditions set forth in § 1319(g)(6)(A)(ii) are satisfied[,]" the district court granted CCC's motion to dismiss with respect to the civil penalty claims only, stating that § 1319 deprived it of jurisdiction only of the civil penalties claims. The injunctive and declaratory claims were left intact. Recognizing that it had, to some extent, waded into uncharted waters, the district court stayed its order to permit an interlocutory appeal under 28 U.S.C. § 1292(b). CCC subsequently filed a petition with this court for permission to appeal under 28 U.S.C. § 1292(b), which we granted.

## DISCUSSION

### I. Scope of issues on appeal

CCC's petition for interlocutory appeal raised the limited question of whether 33 U.S.C. § 1319(g)(6)(A)(ii) operated to bar civil penalty suits only, or

whether the bar extended to declaratory and injunctive relief. Plaintiffs subsequently briefed and argued several other issues, including (1) whether Oklahoma law was actually "comparable" to federal law; (2) whether the state was "diligently prosecuting" any of Plaintiffs' claims; and (3) whether the district court correctly considered evidence outside the pleadings. Defendant contends that this appeal involves only the scope of § 1319(g)(6)(A)(ii)'s jurisdictional bar, while Plaintiffs argue that we should also consider whether the district court correctly applied the statute in the first place.

Interlocutory appeals originate from the district court's order itself, not the specific question certified by the district court or the specific question framed by the appellant. See United States v. Stanley, 483 U.S. 669, 677 (1987). An appellate court can and should address a different legal question if it controls the disposition of the certified order. Homeland Stores, Inc. v. Resolution Trust Corp., 17 F.3d 1269, 1272 (10th Cir. 1994).

Thus, it appears that the correct test for determining if an issue is appropriate for interlocutory review is (1) whether that issue was raised in the certified order; and (2) whether the issue can control the disposition of the order. The issue of whether Oklahoma law is comparable to the Clean Water Act meets this test. The district court order extensively considered this issue and concluded, based on a standard set forth in McAbee v. City of Fort Payne, 318 F.3d 1248,

1256 (11th Cir. 2003), that comparability existed. Any contrary conclusion this court might reach would undoubtedly control the disposition of the order because if we were to find that comparability did not exist, there would be no need to address the issue Defendant raises: whether § 1319(g)(6)(A)(ii)'s jurisdictional bar extended to claims for equitable relief.

Similarly, the issue of whether the district court properly considered evidence outside the record during a motion under Fed. R. Civ. P. 12(b) is properly before the court. This issue was raised in the order below because the court looked to extrinsic evidence such as the notice of violation and consent order. Also, this issue can control the disposition of the order because if the district judge erred, then the order must be reversed and the case should be considered under the summary judgment standard. See Hall v. Bellmon, 935 F.2d 1106, 1112 (10th Cir. 1991).

In contrast, the issue of whether ODEQ was "diligently prosecuting" CCC for its alleged environmental abuses is not properly before us. While the issue was mentioned in the interlocutory order, it was not directly adjudicated. Instead, the district court states that "Plaintiffs do not dispute that the Oklahoma Department of Environmental Quality has commenced and is diligently prosecuting an administrative action under state law against defendant."

To summarize, then, there are three issues properly before us on appeal:

(1)　　Whether the district court correctly considered outside evidence when deciding Defendant's motion to dismiss under Rule 12(b).

(2)　　Whether Oklahoma law is comparable to the Clean Water Act.

(3)　　Whether the jurisdictional bar contained in 33 U.S.C. 1319(g)(6)(A)(ii) applies to claims for declaratory and injunctive relief.

## II.　Consideration of outside evidence

Plaintiffs argue that the district court erred when it considered evidence outside the pleadings in the context of a Rule 12(b)(6) motion to dismiss without first converting the motion to one for summary judgment. This argument is a non-starter, however, because it appears that the order granting the dismissal was based on Rule 12(b)(1) (lack of jurisdiction) and not Rule 12(b)(6) (failure to state a claim).

As a general rule, Rule 12(b)(1) motions to dismiss for lack of jurisdiction take one of two forms: (1) facial attacks; and (2) factual attacks. Holt v. United States, 46 F.3d 1000, 1002-03 (10th Cir. 1995). Under a facial attack, the movant merely challenges the sufficiency of the complaint, requiring the district court to accept the allegations in the complaint as true. Id. at 1002. In a factual attack such as we have here, however, the movant goes beyond the allegations in the complaint and challenges the facts upon which subject matter jurisdiction depends. Id. In such a situation, the court must look beyond the complaint and has wide discretion to allow documentary and even testimonial evidence under

- 11 -

Rule 12(b)(1). Id.; Wheeler v. Hurdman, 825 F.2d 257, 259 n.5 (10th Cir. 1987). However, "a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case." Holt, 46 F.3d at 1003. "[T]he underlying issue [in determining whether the jurisdictional question is intertwined with the merits] is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim." Pringle v. United States, 208 F.3d 1220, 1223 (10th Cir. 2000).

The jurisdictional issue here is raised by 33 U.S.C. § 1319(g). To resolve that issue, a court must answer three questions: (1) whether the state commenced an action; (2) whether that action is being diligently prosecuted; and (3) whether that action is being prosecuted under a comparable state law. See 33 U.S.C. § 1319(g)(6)(A)(ii).

Turning to the substantive cause of action under 33 U.S.C. § 1365(a)(1), there is only one issue: whether the defendant is in violation of an effluent standard or limitation under the chapter. Id. There is no overlap between the cause of action and the jurisdictional section. We conclude, therefore, that it was appropriate for the district court to consider extra-pleading evidence in its resolution of the Rule 12(b)(1) motion without first converting the motion into one for summary judgment.

## III. Comparability

Under 33 U.S.C. § 1319(g)(6)(A)(ii),

> any violation . . . with respect to which a State has commenced and is diligently prosecuting an action *under a State law comparable to this subsection*[3] . . . shall not be the subject of a civil penalty action under subsection (d) of this section or section 1321(b) of this title or section 1365 of this title.

Id. (emphasis, footnote added). The Tenth Circuit has never set forth the appropriate factors to consider in determining comparability, but a number of other circuit courts have weighed in. See, e.g., McAbee, 318 F.3d at 1256; Lockett v. Envtl. Prot. Agency, 319 F.3d 678, 683-84 (5th Cir. 2003); Jones v. City of Lakeland, 224 F.3d 518, 523 (6th Cir. 2000) (en banc); Citizens for a Better Env't-Calif. v. Union Oil Co., 83 F.3d 1111, 1118 (9th Cir. 1996); Ark. Wildlife Fed'n v. ICI Americas, Inc., 29 F.3d 376, 381 (8th Cir. 1994); N. & S. Rivers Watershed Ass'n, Inc. v. Town of Scituate, 949 F.2d 552, 556 (1st Cir. 1991).

The district court below adopted the Eleventh Circuit's "rough comparability" standard. See, McAbee, 318 F.3d at 1256. Applying that standard

---

[3]Subsection 1319(g) deals largely with procedural mechanisms for imposing administrative penalties. These mechanisms may be subdivided into three general categories: (1) penalty-assessment provisions, see § 1319(g)(2); (2) public-participation provisions, see § 1319(g)(4); and (3) judicial-review provisions, see § 1319(g)(8). See also McAbee, 318 F.3d at 1254 (categorizing provisions of § 1319(g) in this manner).

- 13 -

to the facts of the case, it found that Oklahoma's statutory scheme was comparable to the Clean Water Act. In reviewing the district court's decision, then, we have two questions before us: (1) whether the court selected the correct standard of comparability; and (2) whether, under that standard, the court correctly concluded that comparability existed. As both issues involve questions of statutory interpretation by the lower court, our standard of review is de novo. Hill v. SmithKline Beecham Corp., 393 F.3d 1111, 1117 (10th Cir. 2004).

## A. The correct standard of comparability

Most courts that have addressed this issue have been fairly deferential to the state law and tend to find comparability. See, e.g., Lockett, 319 F.3d at 684; Ark. Wildlife Fed'n, 29 F.3d at 381; Scituate, 949 F.2d at 555. One key consideration, often cited by these courts, is the policy of the federal government to "recognize, preserve, and protect the primary responsibility and rights of States to prevent, reduce, and eliminate pollution . . . ." 33 U.S.C. § 1251(b). Furthermore, the Supreme Court has noted in dicta that "[t]he bar on citizen suits when governmental enforcement action is under way suggests that the citizen suit is meant to *supplement* rather than to *supplant* governmental action." Gwaltney of Smithfield Ltd. v. Chesapeake Bay Found., Inc., 484 U.S. 49, 60 (1987) (emphasis added). Finally, the plain meaning of the word "comparable" in the statute does not suggest a rigid standard. See Webster's Third New International

- 14 -

Dictionary 461 (1986) (defining "comparable" as "capable of being compared; . . . having enough like characteristics or qualities to make comparison appropriate").

Taken together, these principles suggest that the Clean Water Act calls for something less than a rigorous comparability standard. We agree with the district court that the Eleventh Circuit's "rough comparability" approach is the most appropriate to the case at bar. Under that approach, we focus on the three categories of provisions contained in 33 U.S.C. § 1319 (g): penalty assessment, public participation, and judicial review. McAbee, 318 F.3d at 1254. Each category of federal provisions must have a "roughly comparable" provision under state law in order for the bar against citizen suits to apply. Id. at 1256. A court operating under the "rough comparability" standard engages in an independent analysis for each category of state-law provisions; if one is found to be lacking, then the citizen suit cannot be precluded. See id.

The "rough comparability" approach stands in contrast to the more forgiving "overall comparability" standard used by the First and Eighth Circuits. See Scituate, 949 F.2d at 556 (noting that correct legal standard for comparability is "whether corrective action already taken and diligently pursued by the [state] government seeks to remedy the same violations as duplicative civilian action."); Ark. Wildlife Fed'n, 29 F.3d at 381 ("[T]he comparability requirement may be

- 15 -

satisfied so long as the state law . . . has the same overall enforcement goals as the federal CWA . . . .").  The "overall comparability" approach also places special emphasis on the comparability of the state's penalty-assessment and public-participation provisions.  Scituate, 949 F.2d at 555; Ark. Wildlife Fed'n, 29 F.3d at 381.  We believe that "rough comparability" is most consistent with the statutory text of § 1319(g).  Title 33, U.S.C. § 1319(g)(6)(A)(ii) requires that a state must take action under a statute comparable to "this subsection" in order to preclude a citizen suit.

> Unlike many other paragraphs in § 1319(g), paragraph (6) makes no references to particular paragraphs within the subsection.  Instead, paragraph (6) refers to the subsection as a whole, which includes not only penalty-assessment provisions but also public-participation and judicial-review provisions.  This is strong textual evidence that Congress intended courts to consider all three classes of provisions when deciding whether state law is "comparable" to § 1319(g) of the CWA.

McAbee, 318 F.3d at 1254 (internal citations omitted).  Furthermore, an "overall" balancing test forces judges to "weigh incommensurable values—for example, the positive value of penalty-assessment provisions against the negative value of starkly dissimilar public-participation provisions."  Id. at 1255 (footnote omitted).  "Rough comparability," which requires an independent analysis of each class of provisions, reduces uncertainty not only for courts but also for potential litigants, administrative agencies, and state legislatures.  See id.

Therefore, we hold that for state law to be "comparable," under 33 U.S.C. 1319(g)(6)(A)(ii), each category of state-law provisions—penalty assessment, public participation, and judicial review—must be roughly comparable to the corresponding class of federal provisions.

**B.      Applying rough comparability to the case at bar**

As an initial matter, we conclude that Oklahoma's penalty-assessment and judicial-review provisions are roughly comparable to federal law. Under 33 U.S.C. § 1319(g)(2), Class I penalties may not exceed $10,000 per violation up to an aggregate penalty of $25,000. Class II penalties may not exceed $10,000 per day up to an aggregate penalty of $125,000. Under Oklahoma law, the civil penalties are identical to the federal law's Class II penalties. Okla. Stat. tit. 27A, § 2-6-206(E). While Oklahoma does not provide for Class I penalties specifically, there is enough commonality between the state and federal provisions to provide a basis for rough comparability.

Similarly, the judicial-review provisions of Oklahoma law are comparable to those of 33 U.S.C. § 1319(g). Both statutes allow an aggrieved party to petition for review in the district court. See 33 U.S.C. § 1319(g)(8); Okla. Stat. tit. 27A, §§ 2-6-206(I)(1), 2-3-502(I). The only apparent difference is the fact that under the federal system, a commenter can seek judicial review, while Oklahoma limits the right of review to those who have been harmed. Such a

difference does not preclude a determination of comparability between Oklahoma law and 33 U.S.C. § 1319 with respect to judicial review.

Thus, the only remaining question is whether Oklahoma's public-participation provisions are comparable to federal law. The public-participation provisions regarding federal administrative penalty actions are covered in 33 U.S.C. § 1319(g)(4). Essentially, the Clean Water Act provides for public participation in three ways: (1) a reasonable notice and opportunity to comment before the issuance of the proposed order assessing a civil penalty; (2) the right to present evidence if a hearing is held; and (3) the right to petition for a hearing if one is not held. Id.

Under Okla. Stat. tit. 27A § 2-6-206(B), any person having an interest has the right to intervene as a party in any administrative proceeding before the ODEQ or in any civil proceedings involving the same environmental violations. This is roughly comparable to 33 U.S.C. §1319(g)(4)(B), which allows for commenters to participate and present evidence at evidentiary hearings. Although the Oklahoma statute is limited to persons having an interest, the basic right of interested parties to present evidence and be heard is preserved. Furthermore, under Okla. Stat. tit. 27A § 2-3-502(I), "[a]ny party aggrieved by a final order may petition the [ODEQ] for rehearing, reopening, or reconsideration." This provision is roughly comparable to 33 U.S.C. § 1319(g)(4)(C), allowing an

interested person to petition for a hearing after issuance of an order if none was held previously.

We also conclude that the Oklahoma law is roughly comparable to the public-notice provisions of 33 U.S.C. § 1319(g)(4)(B). Title 33, U.S.C. § 1319(g)(4)(A) requires notice and a reasonable opportunity to comment on the proposed assessment. While the statute does not define what counts as a reasonable opportunity to comment, EPA regulations implementing § 1319 mandate that public notice must be provided within thirty days after a complaint is issued (but forty days before a penalty is assessed). 40 C.F.R. § 22.45(b)(1). In addition, the notice must provide detailed information about the name and location of the facility, the nature of the violation, and the specific remedy the EPA seeks. Id. § 22.45(b)(2). In contrast, neither Okla. Stat. tit. 27A § 2-3-502 nor § 2-6-206 require notice of an assessment to anyone other than the violator.

However, provisions of the Oklahoma Open Meetings Act provide additional mechanisms of public notice that are roughly comparable to the notice provisions under § 1319(g) (and the regulations implementing it).[4] "Public bodies" under the Open Meetings Act must give the public notice of regularly

---

[4]Plaintiff has not argued before this court that the Oklahoma Open Meetings Act would not apply to ODEQ proceedings. Therefore, for the purposes of this opinion, we assume without deciding that the Open Meetings Act applies to actions of the ODEQ.

scheduled meetings by December 15th of the preceding calendar year, and "special" meetings require forty-eight-hour notice. Okla. Stat. tit. 25 § 311(A)(1), (11). Agendas for such meetings must be posted no later than twenty-four hours before the meeting. Id. § 311(A)(9), (11). In addition, Oklahoma law requires direct notice to interested parties forty-eight hours in advance of any "special meetings." Id. § 311(A)(11). This is similar to 40 C.F.R. § 22.45(b)(2), which requires that notice of a complaint or consent decree be directly provided to parties who request such notice in advance.

Although the Oklahoma notice provisions are not as detailed as those found in 40 C.F.R. § 22.45, we are still compelled to conclude that they provide reasonable notice. Notably, § 1319(g)(6)(A)(ii) only requires state law to be "comparable" with the federal statute. Regulations implementing the statute may offer us some guidance as to what constitutes reasonable notice, but they are not controlling.

Furthermore, we note that the EPA's delegation of enforcement authority to Oklahoma under the Clean Water Act through the National Pollutant Discharge Elimination System ("NPDES") significantly mitigates any concerns that Oklahoma law is not comparable to subsection 1319(g). In order for the EPA to delegate enforcement authority under the CWA to a state, the state must meet certain public participation requirements, pursuant to 40 C.F.R. 123.27(d):

- 20 -

Any State administering [an NPDES] program shall provide for public participation in the State enforcement process by providing *either*:

(1) *Authority which allows intervention as of right in any civil or administrative action to obtain remedies specified in paragraphs (a)(1), (2) or (3) of this section by any citizen having an interest which is or may be adversely affected; or*

(2) assurance that the State agency or enforcement authority will:

    (i) Investigate and provide written responses to all citizen complaints submitted pursuant to the procedures specified in § 123.26(b)(4);

    (ii) Not oppose intervention by any citizen when permissive intervention may be authorized by statute, rule, or regulation; and

    (iii) *Publish notice of and provide at least 30 days for public comment on any proposed settlement of a State enforcement action.*

Id. (emphasis added). As the regulation makes clear, before the EPA can delegate to a state the authority to enforce the CWA, the state must provide public participation in one of two ways: (1) it may provide for intervention as of right for aggrieved persons; or (2) it may provide assurances of public participation, including a thirty-day notice and comment period. That the federal regulation is phrased in the disjunctive is critical to our analysis. Despite the fact that Oklahoma does not provide for the sort of notice and comment period found in 40 C.F.R. §§ 22.45(b)(2) or 123.27(d)(2)(iii), its public participation provisions are still deemed sufficient to permit enforcement of the CWA by virtue of a statute providing intervention for aggrieved persons:

- 21 -

> Any person having any interest connected with the geographic area or waters or water system affected, including but not limited to any aesthetic, recreational, health, environmental, pecuniary or property interest, which interest is or may be adversely affected, shall have the right to intervene as a party in any administrative proceeding before the Department, or in any civil proceeding, relating to violations of the Oklahoma Pollutant Discharge Elimination System Act or rules, permits or orders issued hereunder.

Okla. Stat. Ann. tit. 27A § 2-6-206(B). Oklahoma's public-participation provisions are comparable enough to permit a delegation of CWA enforcement authority, and we conclude they should also be deemed comparable for the purposes of imposing the jurisdictional bar under 33 U.S.C. § 1319(g)(6)(A)(ii). Accord Ark. Wildlife Fed'n v. ICI Americas, Inc., 842 F. Supp. 1140, 1146-47 (E.D. Ark. 1993), aff'd, 29 F.3d 376 (8th Cir. 1994) (holding that Arkansas law that provided intervention as of right to anyone with an interest in state enforcement proceedings provided for "public participation" comparable to that afforded under 33 U.S.C. § 1319(g)(4), "especially in view of 40 C.F.R. § 123.27(d)").

Accordingly, we conclude that all three categories of state provisions—penalty assessment, public participation, and judicial review—are roughly comparable to the corresponding class of federal provisions outlined in 33 U.S.C. 1319(g).

**IV.    Scope of 33 U.S.C. § 1319(g)(6)(A)(ii)**

Having determined that Oklahoma law is comparable to the CWA for purposes of imposing the jurisdictional bar contained in 33 U.S.C. § 1319(g)(6)(A)(ii), we now decide which claims for relief are barred by the statute. Specifically, we must determine if the jurisdictional bar applies only to the civil penalties Plaintiffs seek, or whether the bar also extends to the equitable relief sought.

In its order below, the district court determined that the provisions of 33 U.S.C. § 1319 operated only to bar civil-penalty relief. Plaintiffs' claims for injunctive and declaratory relief, it held, were not barred by the statute. Despite the fact that two other circuit courts have considered and rejected the district court's view, our reading of the statutory language and relevant precedent persuades us that the district court's conclusion is correct.

**A.    Statutory language**

The citizen suit provision of the Clean Water Act is found at 33 U.S.C. § 1365 and states in relevant part:

**(a) Authorization; jurisdiction**
Except as provided in . . . section 1319(g)(6) of this title, any citizen may commence a *civil action* on his own behalf—
   (1)    against any person . . . who is alleged to be in violation of (A) an effluent standard or limitation under this chapter . . . .
                 . . . .

- 23 -

The district courts shall have jurisdiction . . . to enforce such an effluent standard or limitation, or such an order, . . . and to apply any appropriate civil penalties under section 1319(d) of this title.

Id. (emphasis added).

The exception to this jurisdictional provision, 33 U.S.C. § 1319(g), states in the relevant part:

**(g) Administrative penalties**
. . . .
    **(6) Effect of order**
        **(A) Limitation on actions under other sections**
            [A]ny violation—
            . . . .
            (ii)    with respect to which a State has commenced and is diligently prosecuting an action under State law comparable to this subsection . . .
            . . . .
            shall not be the subject of a *civil penalty action* under . . . section 1365 of this title. (emphasis added)

As an initial matter, we note that Congress chose to use the words "civil action" in § 1365 authorizing citizen suits but chose the narrower term "civil penalty action" in the § 1319 exclusion from the §1365 grant. Cheng Fan Kwok v. Immigration and Naturalization Serv., 392 U.S. 206, 212 (1968) (jurisdictional statutes should be construed "with precision and with fidelity."). Thus, Congress' choice of allowing all "civil actions" in § 1365 must be limited by its concurrent choice to eliminate "civil *penalty* actions" when a diligent state prosecution occurs under a comparable state law. Furthermore, the terms of the statute make clear that civil penalties are distinct from other remedies. In § 1365(a), Congress

- 24 -

explicitly grants jurisdiction to "enforce" an effluent standard or limitation (by presumably issuing a declaratory judgment or an injunction) *and* to "apply any appropriate civil penalties" (by assessing the appropriate fine). A strict reading of the statute, then, indicates that while § 1365 grants jurisdiction over all types of civil remedies, the limitation in § 1319 only strips jurisdiction with regard to the district court's ability to impose civil penalties.

In fact, there is a separate jurisdiction-stripping provision for injunctive remedies. Under 33 U.S.C. § 1365(b)(1)(B), no private action may be filed if a "State has commenced and is diligently prosecuting a civil or criminal action in a court of . . . a State to require compliance with the standard." Again, there is a difference in language between § 1365(b)(1)(B) and § 1319(g)(6). Section 1365(b)(1)(B) precludes *any* civil action when a state initiates judicial proceedings against a polluter. However, if a state only opts for administrative enforcement, then § 1365(b)(1)(B) will not apply. At that point, we look to § 1319, and that section says that the violation may not be the subject of a civil *penalty* action.

What results from these statutes is a two-tiered claim preclusion scheme. The broadest preclusion exists when a state commences and diligently prosecutes a court action to enforce the standard. If this happens, § 1365 indicates that "no action" may be commenced by a private person. A narrower preclusion exists

when the state does something less than judicial enforcement, such as enter into a consent order. All that is available to a defendant in those cases is § 1319(g)(6)(A)(ii), which specifically excludes civil penalties from the scope of permissible private enforcement remedies, but does not preclude other equitable relief.

## B.     Relevant precedent

CCC's argument that 33 U.S.C. § 1319(g)(6)(A)(ii) bars equitable relief is largely grounded in the Supreme Court's decision in Gwaltney. In that case, the specific question on appeal was whether civil penalties could be sought for wholly past violations of the Clean Water Act. Gwaltney, 484 U.S. at 52. The plaintiffs argued that since the EPA administrator is permitted to pursue civil penalties for past violations under the authority granted her by 33 U.S.C. § 1319, the provision for citizen suits, which has similar statutory language, should be construed in the same manner. Id. at 58. The Court ultimately rejected this argument after a close examination of the statutory language. Id. at 58-59. It first noted that § 1319 (the agency enforcement provision) provides for civil penalties and equitable relief in wholly different sections. Id. at 58.

> In contrast, [§ 1365(a)] does not authorize civil penalties separately from injunctive relief; rather, the two forms of relief are referred to in the same subsection, even in the same sentence. The citizen suit provision suggests a connection between injunctive relief and civil penalties that is noticeably absent from the provision authorizing agency enforcement.

Id. (internal citations omitted).

Contrary to the position taken by CCC in its brief, the Court in Gwaltney did not hold that civil penalties and injunctive remedies are "inextricably intertwined." The Supreme Court held that a civil penalty may only be sought when the citizen is also seeking injunctive relief. Gwaltney, 484 U.S. at 59. Put another way, the Court held that a civil penalty suit cannot be maintained when the citizen cannot seek an injunction. The issue before us is instead the mirror image of the Supreme Court's holding: whether a suit seeking injunctive relief can be maintained when the plaintiff cannot seek civil penalties.

Both the First and Eighth Circuits have addressed this issue and held that the bar contained in 33 U.S.C. § 1319(g)(6)(A)(ii) applies not only to civil penalty relief, but also to injunctive and declaratory relief as well.[5] Scituate, 949 F.2d at 558; Ark. Wildlife Fed'n, 29 F.3d at 383. Both cases relied heavily on the above-cited language from Gwaltney. In Scituate, the First Circuit went so far as to say that

> it is inconceivable to us that the section [1319(g)] ban is only meant
> to extend to civil penalty actions. Surely if the limitation of civilian
> suits is to have any beneficial effect on the enforcement of clean

---

[5]But see Coalition for a Liveable W. Side, Inc. v. N.Y. City Dep't of Envtl. Prot., 830 F. Supp. 194, 197 (S.D.N.Y. 1993) (holding that 33 U.S.C. § 1319(g)(6)(A)(ii) does not foreclose citizen suits for injunctions or declaratory relief).

water legislation, the section [1319(g)] ban must cover all civil actions.

942 F.2d at 558. Two years later, the Eighth Circuit reached essentially the same conclusion in <u>Arkansas Wildlife Federation</u>, 29 F.3d at 383.

## C. Analysis

We are compelled to disagree with the First and Eighth Circuits for several reasons. First, as noted above, the language of the statute is strong evidence that Congress did not intend to exclude equitable remedies when it enacted 33 U.S.C. § 1319(g)(6)(A)(ii). It is difficult to read the provisions of § 1365 and § 1319 without conceding that the terms do not support the conclusion that Appellant asks us to make. The <u>Scituate</u> court justified its decision because it feared that the result reached by a literal interpretation of the statute "would lead to deferring to the primary enforcement responsibility of the government only where a penalty is sought in a civilian action, as if the policy considerations limiting civilian suits were only applicable within that context." 949 F.2d at 558.

But this statement ignores the effect of 33 U.S.C. § 1365(b)(1)(B), which prohibits any citizen suit (not just civil penalty suits) if the state has commenced judicial proceedings in any court. The only situation in which the state could not control all aspects of the enforcement of the Clean Water Act is when (1) it is pursuing something less than judicial enforcement and (2) a citizen is pursuing an injunction in federal court.

- 28 -

Second, there is evidence in the legislative history that Congress contemplated the position adopted by the district court and evidenced by the statutory language. Specifically, the House Conference Committee Report states that "[n]o one may bring an action to recover civil penalties under section . . . [1365] for any violation with respect to which the Administrator has commenced and is diligently prosecuting an administrative civil penalty action . . . . [T]his limitation would not apply to: 1) an action seeking relief other than civil penalties (e.g., an injunction or declaratory judgment)." H.R. Conf. Rep. No. 1004, 99th Cong., 2d Sess. at 133 (1986).

Finally, we are not persuaded that allowing a citizen suit for an injunction to proceed while there is an ongoing state enforcement action would lead to an "inconceivable" result. Scituate, 949 F.2d at 558. The governing principle behind § 1319(g) is to avoid duplicative monetary penalties for the same violation. See Coalition for a Liveable W. Side, 830 F. Supp. at 197. That purpose is served by the district court's order below. However, the fact that a state judicial proceeding can foreclose all private relief insures that conflicting or duplicative equitable remedies are not likely to be imposed. Also, as the district court in Coalition for a Liveable West Side points out,

> the statute permits a federal district court to entertain an action for
> injunctive relief for situations where, for example, a permit holder
> may have paid the relevant civil penalties but continues to violate its
> permit limitations or where the injunctive relief obtained in the state

- 29 -

proceedings turns out to be inadequate to address the violations at issue.

Id. Furthermore, even if there were simultaneous injunctive actions brought by both the state and a citizen, the court can manage the actions to ensure that the state action will predominate. Id. "It may even be appropriate to stay the citizen action while the city can demonstrate that the State is indeed diligently prosecuting its action and seeking adequate relief." Id.

Because the result reached by the court below (1) is grounded in the statutory language, (2) reflects the legislative history, and (3) leads to a rational result, we are not inclined to interpret 33 U.S.C. § 1319(g)(6)(A)(ii) in the same broad manner as the First and Eighth Circuits. As a result, we hold that 33 U.S.C. § 1319(g)(6)(A)(ii), where it applies, bars only civil penalty claims and not claims requesting declaratory or injunctive relief.

## CONCLUSION

Having concluded that (1) the district court did not err in considering evidence outside the pleadings; (2) Oklahoma law is comparable to the Clean Water Act for the purposes of 33 U.S.C. § 1319(g)(6)(A)(ii); and (3) the jurisdictional bar in 33 U.S.C. § 1319(g)(6)(A)(ii) does not apply to equitable relief, we AFFIRM the judgment of the district court and REMAND for further proceedings consistent with this opinion.